# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# AT CHATTANOOGA

| | |
|---|---|
| CARMELIA RENEE MARTIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO.: 1:10-CV-00008 |
| ) | |
| CONNECTICUT GENERAL LIFE ) | DISTRICT JUDGE MATTICE, JR. |
| INSURANCE CO., ) | MAGISTRATE JUDGE CARTER |
| ) | |
| Defendant. ) | |
| ) | |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO DISMISS OR TO STAY JUDICIAL PROCEEDINGS

This case arises out of Plaintiff's employment with Defendant Connecticut General Life Insurance Company ("CGLIC" or "Company"). On January 14, 2010, Plaintiff, Carmelia Renee Martin ("Plaintiff"), filed a Complaint against the Company alleging that she was discriminated against because of her race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").

As demonstrated below, Plaintiff is bound by a valid and enforceable agreement to arbitrate all claims arising out of her employment and the termination of her employment with the Company, including claims under Title VII. Pursuant to the Federal Arbitration Act ("FAA") and the binding Supreme Court and Sixth Circuit precedent discussed herein, the Company respectfully submits that the Court should enforce Plaintiff's agreement by ordering Plaintiff to submit her claims to binding arbitration and either dismissing Plaintiff's Complaint or staying this action. Plaintiff has refused the Company's multiple requests that she submit her claims to binding arbitration pursuant to the terms of her arbitration agreement. Accordingly, the Company requests that the Court award the Company its attorneys' fees and costs associated with filing this motion.

## STATEMENT OF RELEVANT FACTS

### A. Plaintiff's Employment With CGLIC

From December 11, 2000 until June 8, 2009, Plaintiff was employed by CGLIC as a Data Entry Operator or Clerk in the Company's office in Chattanooga, Tennessee.[1] (Declaration of Marjorie G. Stein ("Stein Decl."), ¶ 7.)[2] CGLIC is one of the CIGNA Companies, and an indirect subsidiary of CIGNA Corporation. (Stein Decl., ¶ 3.) In her capacity as a Data Entry Clerk, Plaintiff regularly handled claims received from virtually every state in the country through a database located in Windsor, Connecticut. (Declaration of Albert Leavengood ("Leavengood Decl."), ¶ 5.)

### B. CGLIC's Comprehensive ADR Policy And Plaintiff's Agreement To Be Bound To Its Terms

In 1995, the CIGNA Companies implemented a nationwide arbitration policy requiring the companies that are subsidiaries or affiliates of CIGNA Corporation, and all of their employees (including the employees of CGLIC), to submit to binding arbitration all employment related disputes. (Stein Decl., ¶ 5.) CGLIC's comprehensive arbitration policy and related rules and procedures provide the exclusive avenue for resolving Plaintiff's employment related disputes. (See Exhs. D and G to Stein Decl.).

#### 1. The Agreement To Arbitrate In Plaintiff's Employment Application

On December 7, 2000, Plaintiff completed an application for employment with the Company that included a written agreement to resolve all employment-related disputes "<u>exclusively</u> through" the Company's "internal and external employment dispute resolution processes." (Stein Decl., ¶ 8 & Ex. A thereto) (emphasis in original). Specifically, Plaintiff

---

[1] Plaintiff began her employment with CGLIC on December 11, 2000 as a Data Entry Operator. On January 7, 2005, Plaintiff's job title was changed to Data Entry Clerk. (Stein Decl., ¶ 7.)
[2] The declarations cited herein can be found in CGLIC's accompanying "Appendix of Evidentiary Materials," in alphabetical order by the declarant's last name.

signed her application directly under the following "all-caps" language:

> I AGREE THAT IN RETURN FOR BEING CONSIDERED FOR EMPLOYMENT AND/OR RECEIVING AN OFFER OF EMPLOYMENT, I WILL RESOLVE ANY DISPUTE ABOUT MY CANDIDACY FOR EMPLOYMENT, EMPLOYMENT OR CESSATION OF EMPLOYMENT <u>EXCLUSIVELY</u> THROUGH THE INTERNAL AND EXTERNAL EMPLOYMENT DISPUTE RESOLUTION PROCESSES OF MY EMPLOYER, WHICH INCLUDE FINAL AND BINDING **ARBITRATION** WITH A NEUTRAL ARBITRATOR. I UNDERSTAND THAT MY EMPLOYER ALSO AGREES TO FOLLOW THE DISPUTE RESOLUTION PROCESSES AND THAT COPIES OF THE POLICIES AND PROCEDURES DESCRIBING THE DISPUTE RESOLUTION PROCESSES ARE AVAILABLE TO ME.

(*Id.*) (emphasis in original).

### 2. Plaintiff's Assent To The Company's Mandatory Arbitration Policy

At the start of her employment, Plaintiff received a copy of the July 1998 version of the *You and CIGNA* Employee Handbook. (Stein Decl., ¶ 9 & Ex. B thereto.) The first page of the Handbook provides, in part, that:

> This handbook contains important information about your contract of employment . . . ***The terms of your employment mentioned in this Handbook are legally binding, and you may wish to review these terms with your legal counsel.***
>
> \*\*\*
>
> . . . [B]y accepting employment and being eligible to receive increases in compensation and benefits, you agree that you will not go to court or a government agency for a hearing to decide an employment-related claim. Instead, you will resolve all employment related legal disputes (except worker's compensation and unemployment compensation) by going to a neutral third-party arbitrator. ***Regardless of what anyone may have told you or you may have read before you were hired or after, these . . . terms of your employment are the full and complete agreement between you and the Company concerning these terms and cannot be changed except by a written agreement between you and your employer signed by the President of the Company.***

(Stein Decl., ¶ 10 & Ex. C thereto) (emphasis in original).

Pages 28-31 of the *You and CIGNA* Handbook describe the Company's Employment Dispute Resolution Process, including the mandatory arbitration process under the Company's

Employment Dispute Arbitration Policy ("Arbitration Policy"). (Stein Decl., ¶ 11 & Ex. D thereto.) With respect to the Arbitration Policy, the *You and CIGNA* Handbook states that:

> ***Mutual promises by both the employee and the employer to arbitrate employment related legal claims is a term and condition of an employee's employment and arbitration must be used rather than going to court to enforce legal rights and claims*** . . .
>
> The agreement to arbitrate applies to serious employment-related disagreements and problems, which are those that concern a right, privilege, or interest recognized by applicable law. Such serious disputes include claims, demands or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Civil Rights Act of 1991, the Equal Pay Act, the Age Discrimination in Employment Act, the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act, the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Family and Medical Leave Act, and any other federal, state or local statute, regulation or common law doctrine, regarding employment discrimination, conditions of employment, or termination of employment. . . .
>
> ***
>
> Arbitration is conducted by a neutral third party who is an expert in employment matters and it is administered by the American Arbitration Association (AAA). Except for a filing fee, the costs of the arbitration will be paid by the Company unless the employee wants to share in the costs.
>
> The employee and the Company agree to be bound by the decision made by the external, neutral arbitrator. The arbitrator chosen by the employee and employer in accordance with the employer's arbitration rules and procedures will be the sole and exclusive judge of the proper interpretation of the agreement of the parties as well as the rules and procedures of the arbitration process. The arbitrator will have all of the power a judge hearing the dispute would have so that the significant differences between going to arbitration and going to court are that the process will be much faster, less expensive and there will be no jury.

(*Id.*)(emphasis in original).

Plaintiff signed the "Employee Handbook Receipt and Agreement," and thereby acknowledged that:

> I understand that by accepting employment and being eligible to receive increases in compensation and benefits, I am agreeing to the following two important terms of my employment described in *You and CIGNA*: (1) my employment can be terminated by me or my employer at any time for any reason – therefore, my employment is at the will of either party, and (2) I will use the Company's

4

> internal and external employment dispute resolution processes to resolve legal claims against the Company – therefore rather than go to court . . . I will submit my employment related legal claims except workers' compensation and unemployment compensation to final and binding neutral third party arbitration. I understand further that these two terms of my employment replace and supercede any prior agreement concerning these terms and cannot be changed except in writing signed by me and the President of the Company.

(Stein Decl., ¶ 9 & Ex. B thereto.)

On December 11, 2000, Plaintiff's first day of employment with CGLIC, Plaintiff received a stand-alone copy of the Company's mandatory Arbitration Policy. (Stein Decl., ¶ 13 & Ex. E thereto.) Like the *You and CIGNA* Handbook, the stand-alone Arbitration Policy notified Plaintiff that "arbitration by a neutral third-party is the required and final means for the resolution of any employment related legal claim . . . ." (*Id.*)

On November 9, 2005, Plaintiff again confirmed her agreement to resolve all of her employment related disputes with the Company through binding arbitration. (Stein Decl., ¶¶ 14 - 17 & Ex. F thereto.) Specifically, Plaintiff received an email containing a hyperlink to a web page titled *Your CIGNA Life*. On that web page, Plaintiff was notified of an updated Employee Handbook that contained the terms and conditions of Plaintiff's employment. Plaintiff had the option of clicking on a hyperlink to review and/or print the contents of the updated CIGNA Employee Handbook. (Stein Decl., ¶¶ 14-16.) Plaintiff was required to confirm her agreement to the policies set forth in the updated Employee Handbook and CIGNA's Employment Dispute Arbitration Program by completing an Affirmation Form, which was made accessible to Plaintiff by way of a separate hyperlink on the *Your CIGNA Life* web page. (Stein Decl., ¶¶14-15.) To complete the Affirmation Form, Plaintiff was required to type her full name in a blank box provided on that form and click on a "YES" button. (Stein Decl., ¶15.) Under the box in which Plaintiff typed her name, eight short paragraphs appeared, including the following:

> By clicking "YES" in the box below:
>
> - I acknowledge that I have received or reviewed the updated (November 2005) CIGNA Employee Handbook, which outlines the policies, procedures and programs that are available and applicable to all of the CIGNA companies' employees.
>
>   ****
>
> - I agree any dispute between **CIGNA** and me arising out of or relating to my candidacy for employment, employment, or termination of employment with **CIGNA** (with the exception of workers compensation claims ERISA claims and administrative agency charges) shall be resolved under **CIGNA's** Employment Dispute Arbitration Program which includes final mandatory binding arbitration. I understand that any such Arbitration will be conducted pursuant to the **CIGNA** Employment Dispute Arbitration Rules and Procedures in effect at the time such arbitration is commenced.

(Stein Decl., ¶15.). Plaintiff electronically accepted the terms of the updated CIGNA Employment Handbook and the Employment Dispute Arbitration Program by clicking on the "YES" button on November 9, 2005. (See Stein Decl., ¶¶14-17.).

### 3. CGLIC's Employment Dispute Arbitration Rules And Procedure.

The Company's Employment Dispute Arbitration Rules and Procedures in effect at the time Plaintiff was terminated from her employment ("Arbitration Rules") provide, *inter alia*, that arbitration is to be governed by the Federal Arbitration Act, 9 U.S.C. Sec. 1 *et seq*. (Page 6, ¶ 9 of Arbitration Rules, attached as Exhibit G to Stein Decl.) The Arbitration Rules require the appointment of a neutral arbitrator. (*Id*. at page 5, ¶ 8.) The Arbitration Rules also permit discovery including exchange of witness lists and documents, as well as depositions by both parties. (*Id*. at pages 6-7, ¶ 11(a),(b).) The Arbitration Rules require the arbitrator to issue a signed, written decision, and confirm that the arbitrator has the authority "to award any remedy that either party would have been entitled to had the employee taken the dispute to a government agency or to a court." (*Id*. at page 12, ¶25(b).) CGLIC's Arbitration Rules require the employee

to pay only a filing fee of one hundred and fifty dollars ($150.00), and provide that the Company will pay 100% of any arbitration administrative fees unless the employee chooses to share in such expenses. (*Id.* at pages 1, ¶1; and 12, ¶29.).

        **C.     Plaintiff's Refusal To Honor Her Arbitration Agreement.**

On June 9, 2010, counsel for the Company contacted Plaintiff by phone and reminded Plaintiff of the binding arbitration agreement she had entered into with the Company. Plaintiff was asked to honor her agreement to submit her claims to arbitration, and told that CGLIC would ask the court to order her to pay its fees and cost if it became necessary to file a motion to compel arbitration. (Pierce Decl., ¶3.) On June 10, 2010, Company counsel sent Plaintiff a letter and related documents establishing that Plaintiff had affirmatively agreed to resolve employment disputes under the Company's Employment Dispute Arbitration Program. (Pierce Decl., ¶4, Exh. A.) Documents the Company provided to Plaintiff with the letter included her November 9, 2005 Employee Handbook Acknowledgment, a copy of the Arbitration Policy and Rules and Procedures, and the legal authority confirming the validity of the arbitration agreement. (*Id.*) In the letter, Plaintiff was again notified that CGLIC would seek recovery of its fees and costs if she failed to honor her arbitration agreement.

On June 17, 2010, Plaintiff sent the Company a letter in which she rejected CGLIC's request that she honor her arbitration agreement. (Pierce Decl., ¶5, Exh. B.) On June 21, 2010, Company counsel sent Plaintiff another letter with additional personnel documents establishing her agreement to arbitrate employment-related claims against the Company. The Company asked Plaintiff to provide it with written confirmation of her agreement to dismiss her lawsuit and submit her claims to arbitration no later than 12 p.m. EDT on June 22, 2010. (Pierce Decl., ¶6, Exh. C.) Plaintiff was told in that letter for a third time that CGLIC would ask the court to

order her to pay any fees and costs it incurred if it was forced to file a motion to compel arbitration. Plaintiff failed to respond to the June 21 letter.

## ARGUMENT AND CITATION OF AUTHORITY

The Federal Arbitration Act ("FAA") establishes a "strong federal policy in favor of arbitration."[3] *Wilks v. The Pep Boys*, 241 F.Supp.2d 860, 863 (M.D. Tenn. 2003). This "strong federal policy" applies with full force to agreements that require employees (and former employees) to arbitrate statutory employment-discrimination claims, such as the Title VII claims in this case. *See, e.g., Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109 (2001); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26-27 (1991); *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 509 (6th Cir. 2004).

Under the FAA, a party seeking to compel arbitration has the burden of showing that: (1) "the parties have executed a valid arbitration agreement" that is enforceable under "traditional principles of state contract law;" and (2) the claims before the court "fall[] within the scope of that agreement." *Johnson v. Long John Silver's Rests., Inc.*, 320 F.Supp.2d 656, 661-64 (M.D. Tenn. 2004); 9 U.S.C. §§ 2-4. Once the moving party has made these showings, "the party opposing arbitration bears the burden of proving that the arbitration agreement should not be enforced" due to "'fraud, duress, mistake, or some other ground upon which a contract may be voided.'" 9 U.S.C. §§ 2-4; *McMullen v. Meijer, Inc.,* 355 F.3d 485, 490-92 (6th Cir. 2004); *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 657-60 (6th Cir. 2003); *Cooper*, 367 F.3d at 498; *Johnson,* 320 F.Supp.2d at 667. "Any doubts as to whether an agreement is enforceable, including defenses

---

[3] The FAA applies only to agreements that arise out of a contract affecting interstate commerce. 9 U.S.C. § 2; *Allied-Bruce Terminex v. Dobson,* 513 U.S. 265, 277-82 (1995). In this case, Plaintiff's arbitration agreement clearly arose out of a contract affecting interstate commerce, namely Plaintiff's at-will contract of employment with CGLIC. (Leavengood Decl., ¶¶ 2, 6.) *See Allied-Bruce Terminex,* 513 U.S. at 277-82 (holding that a home extermination contract between a pest-control company and an Alabama homeowner was a "contract evidencing a transaction involving commerce" because of (among other things) "the multistate nature of" the company).

to arbitrability, should be resolved in favor of arbitration." *Johnson*, 320 F.Supp.2d at 663 (citing *Moses H. Cone Mem'l Hosp. v . Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983)).[4]

As demonstrated below, Plaintiff entered into a valid and enforceable agreement to arbitrate all employment-related claims that she might have against CGLIC: (1) when she signed her name beneath the conspicuously-worded arbitration agreement that was set forth in her employment application (hereinafter "Application Agreement"); (2) when she signed the *You and CIGNA* "Employee Handbook Receipt and Agreement," and thereby acknowledged that she was "agreeing" to be bound by the Company's mandatory Arbitration Policy (hereinafter "Handbook Agreement"); and (3) when she clicked on the "YES" button in response to the Company's electronic query concerning Plaintiff's agreement to the policies set forth in the updated CIGNA Employment Handbook (hereinafter "Second Handbook Agreement). *See, e.g.*, *Byrd v. CIGNA Healthcare,* 2002 U.S. Dist. LEXIS 26902, **2-12 (E.D. Tenn. Feb. 8, 2002) (holding that the mandatory Arbitration Policy contained in the *You and CIGNA* Employee Handbook constituted a binding and enforceable arbitration agreement that required the plaintiff

---

[4] Tennessee law also requires enforcement of the Arbitration Agreement. The Tennessee Uniform Arbitration Act ("TUAA") provides a comprehensive scheme for enforcing privately contracted arbitration agreements, which does not restrict the enforcement of arbitration agreements to any greater degree than the FAA. *Prudential MC Asset Holding Co., LLC v. Conn. Gen. Life Ins. Co.*, 2004 U.S. Dist. LEXIS 10174 at *17 (E.D. Tenn. 2004) (stating the TUAA "is substantially the same as" the FAA). The TUAA states in pertinent part: (a) A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable save upon such grounds as exist at law or in equity for the revocation of any contract. TENN. CODE ANN. § 29-5-302. Thus, under Tennessee law, as under federal law, an arbitration agreement may only be invalidated for the same reasons as other contracts.

to arbitrate her ADA claims);[5] The scope of Plaintiff's Application Agreement, Handbook Agreement and Second Handbook Agreement (collectively, "Arbitration Agreement") clearly encompass Plaintiff's statutory claims under Title VII. Because Plaintiff cannot show that there are any other grounds for voiding her Arbitration Agreement, the Court should dismiss or, in the alternative, stay these proceedings and compel Plaintiff to arbitrate her claims.

### A. Plaintiff's Arbitration Agreement Is Valid And Enforceable Under Traditional Principles of State Contract Law.

Tennessee law governs the threshold issue of whether Plaintiff's Arbitration Agreement constitutes a valid and enforceable contract. *See Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987)(holding that "state law . . . concerning the validity, revocability, and enforceability of contracts" governs whether an arbitration clause is a contract under the FAA); *Cooper*, 367 F.3d at 499 (holding that Tennessee contract law applied because the arbitration agreement was executed in Tennessee, and the plaintiff's claims arose out of her employment in Tennessee). Under Tennessee law, an agreement is deemed to be a valid and enforceable contract if: (a) it is sufficiently definite as to its material terms; (b) the parties mutually agreed to its material terms;

---

[5] A copy of the *Byrd* decision is attached as Exhibit A to the accompanying "Appendix of Decisions Concerning Mandatory Arbitration Policies." In other employment-related lawsuits that have been filed against the various CIGNA Companies, the courts have consistently held the Company's mandatory Arbitration Policy to be a binding and enforceable contract that requires arbitration of all employment-related claims. *See, e.g., Morant v. Conn. Gen. Life Ins. Co.,* No. 3:05-CV-00008 (M.D. Tenn. July 8, 2005)(Ex. B to same Appendix)*; Cowan v. Conn. Gen. Life Ins. Co.*, No. 1:01-CV-1623 (N.D. Ga. Dec. 28, 2001)(Ex. C); *Glenn v. Intracorp, Inc.*, No. 1:00-CV-1863 (N.D. Ga. Mar. 2, 2001)(Ex. D); *Porter-McBride v. CIGNA Corp.*, No. 1:01-CV-471 (N.D. Ga. Dec. 11, 2001)(Ex. E); *Simpson v. CIGNA Healthcare of Ga., Inc.*, No. 1:01-CV-0649 (N.D. Ga. Dec. 17, 2001)(Ex. F); *Powell v. CIGNA Prop. and Cas. Co.,* No. 3:99CV857 (E.D. Va. June 6, 2000)(Ex. G); *Thomas v. CIGNA Healthcare of Ohio,* No. C2-98-875 and C2-98-997 (S.D. Oh., Sept. 30, 1999)(Ex. H); *Henderson v. Healthsource Mass.,* No. 98-40121-NMG (D. Mass. Sept. 14, 1999)(Ex. I); *Fahim v. CIGNA Invs., Inc.,* No. 3:98CV232 (D. Conn. Sept. 10, 1998)(Ex. J); *Venuto v. Ins. Co. of N. Am.,* 1998 WL 414723 (E.D. Pa. July 22, 1998)(Ex. K); *Wilson v. Ins. Co. of N. Am.,* No. 97-CV-76036 (E.D. Mich. April 28, 1998)(Ex. L); *Thompson v. Ins. Co. of N. Am.*, No. 3:96CV567-P (W.D.N.C. Feb. 23, 1998)(Ex. M); *Porter v. CIGNA*, 1997 WL 1068630 (N.D. Ga. Mar. 26, 1997)(Ex. N); *Toone v. Conn. Gen. Life Ins. Co.,* No. 96-AS00974 (Cal. Super. March 11, 1997)(Ex. O); *Budge v. CIGNA Ins. Co.,* No 96AS00974 (Ca. Super. Aug 9, 1996)(Ex. P). Additionally, in the employment-related lawsuits that have been filed against other companies utilizing arbitration agreements in the Eastern District of Tennessee, the Court has consistently ruled the companies' arbitration policies are a binding and enforceable contract that requires employees (and former employees) to arbitrate all employment-related claims. *See. e.g., Gentry v. Home Quality Mgm't., Inc.,* 2006 U.S. Dist. LEXIS 40681 (E.D. Tenn. June 16, 2006) (Ex. Q); *Stout v. Mrs. Stratton's Salads, Inc.,* 2006 U.S. Dist. LEXIS 33140 (E.D. Tenn. May 15, 2006) (Ex. R).

and (c) it is supported by consideration. *See, e.g., Price v. Mercury Supply Co.*, 682 S.W.2d 924, 937 (Tenn. Ct. App. 1984). Because Plaintiff's Arbitration Agreement satisfies all three of these elements, it is valid and enforceable under Tennessee law.

### 1. The Terms Of Plaintiff's Arbitration Agreement Are Sufficiently Defined.

Plaintiff's Arbitration Agreement is definite and certain as to its scope; it expressly provides that it encompasses only "serious employment-related" claims "that concern a right, privilege, or interest recognized by applicable law," including "Title VII of the Civil Rights Act of 1964, . . . and any other federal, state or local statute, regulation or common law doctrine, regarding employment discrimination, conditions of employment, or termination of employment." (Stein Decl., ¶ 12 & Ex. D thereto.) The Agreement states that arbitration shall be "final and binding" as to both parties, it identifies the American Arbitration Association ("AAA") as the arbitral forum, and it specifies the total cost for an employee to initiate the arbitration process ($150.00). (Exs. A-G to Stein Decl.) As a matter of law, the terms of the Arbitration Agreement are sufficiently defined to enable the Court to "discern what the agreement" is, making it enforceable under Tennessee law. *See Higgins v. Oil, Chem. & Atomic Workers Int'l Union*, 811 S.W.2d 875, 881 (Tenn. 1991).

### 2. The Parties Mutually Agreed To Be Bound By The Company's Mandatory Arbitration Policy.

Under Tennessee law, a party's signature on a contract constitutes "prima facie evidence that the contract contains the true intention of the parties, and shall be enforced as written." Tenn. Code Ann. 47-50-112(a)("All contracts . . . in writing and signed by the party to be bound, including endorsements thereon, shall be prima facie evidence that the contract contains the true intention of the parties, and shall be enforced as written . . ."). By her signature on the Application Agreement, Plaintiff expressly agreed that she would "resolve any dispute about

[her] . . . employment or cessation of employment <u>exclusively</u> through the internal and external employment dispute resolution processes of [her] employer, which include final and binding **arbitration** with a neutral arbitrator." (Stein Decl., ¶ 8 & Ex. A thereto.)  *See Meese & Assocs. v. Powers*, 1998 Tenn. App. LEXIS 167, *2 (Tenn. Ct. App. 1998) (finding that the defendant's signing of the agreement was "an act which the reader of the contract would naturally perceive as a manifestation of his assent to the terms contained therein").

By signing the Handbook Agreement, Plaintiff expressly acknowledged that she was assenting to the Company's mandatory Arbitration Policy, and that "***rather than go to court***," she would resolve any "employment related legal claims" exclusively through "binding neutral third party arbitration." (Stein Decl., ¶ 9 & Ex. B thereto) (emphasis added).  *See Fisher v. GE Med. Sys.*, 276 F.Supp.2d 891, 894 (M.D. Tenn. 2003) ("It is well-settled in Tennessee that the terms of an employee handbook may become part of the employee's contract of employment"). Moreover, the Arbitration Policy to which Plaintiff assented explicitly states that the agreement "***to arbitrate employment related legal claims is a term and condition of an employee's employment***" and that "***arbitration must be used rather than going to court to enforce legal rights and claims***."  (Stein Decl., ¶¶ 9, 11-12 & Ex. D thereto)(emphasis in original).

The decision in *Byrd v. CIGNA Healthcare,* 2002 U.S. Dist. LEXIS 26902 (E.D. Tenn. Feb. 8, 2002), is directly on point and highly instructive.  The plaintiff in *Byrd* filed a lawsuit alleging that her CIGNA company employer violated her rights under the ADA.  Like the Plaintiff in this case, the plaintiff in *Byrd* received the *You and CIGNA* Handbook and signed an "Employee Handbook Receipt."  *Id.* at *7.  Although the plaintiff in *Byrd* argued that she did not truly agree to the Handbook's mandatory Arbitration Policy, the court found that her "signed statement confirms that she read and accepted the provisions contained in the handbook."  *Id.* at

*12. Therefore, the court dismissed the plaintiff's lawsuit and held that, "[s]hould [she] seek to pursue [her] claims, she shall submit them to final and binding arbitration." *Id.* at *13.

On November 9, 2005, Plaintiff clicked on the "YES" button in response to the Company's request that she acknowledge that she: (1) had received or reviewed the updated CIGNA Employee Handbook that outlined policies applicable to Company employees; and (2) agreed that any employment-related dispute between Plaintiff and the Company would be subject to "final mandatory binding arbitration." By that action, Plaintiff entered into a binding "clickwrap" agreement with the Company, the terms of which require Plaintiff to submit her disputes to binding arbitration. *Feldman v. Google, Inc.,* 513 F. Supp. 2d 229 (E.D. Pa. 2007); *See als*o, 15 U.S.C. §§7001-7031.

A "clickwrap" agreement is an agreement set forth on an internet webpage that requires a user to consent to the terms and conditions of such agreement by clicking on a dialogue box on the webscreen in order to proceed with the transaction. *Feldman*, 513 F. Supp. 2d 229 at 236. The test for determining the validity of a clickwrap agreement is whether the party challenging enforceability had reasonable notice of the terms of the agreement and manifested his or her assent thereto. *Id.* As with any binding contract, absent fraud, the failure to read a valid clickwrap agreement does not excuse noncompliance with its terms. *Id.* See, also, *Marlar v. Yellow Transportation* 2004 U.S. Dist. Lexis 26653 (W.D. Mo. Nov. 29, 2004) (court declared that reasonable notice of arbitration policy existed where employee was notified, by way of email, that employer had implemented an arbitration policy as a condition of continued employment and that an employee who remained on the employer's payroll would be assenting to binding arbitration.) *See also*, *Siebert v. Amateur Ath. Union of the United States, Inc.*, 422 F. Supp. 2d 1033, 1040 (D. Minn. 2006) (applicants for membership in the defendant's sports

13
Case 1:10-cv-00008-HSM-WBC   Document 8   Filed 06/24/10   Page 13 of 18   PageID #: 33

program assented to arbitration by clicking on the electronic page that included an arbitration policy.).

In the present case, Plaintiff clicked the "YES" button to acknowledge she had received or reviewed the updated Employee Handbook and she would be subject to the policies contained therein, and agreed to arbitrate her employment disputes with the Company. (See Stein Decl., ¶¶14-17.) Accordingly, Plaintiff had ample notice of the existence of the arbitration agreement to which she manifested her assent by clicking on the "YES" button.

Plaintiff may claim that she did not take the time to read her Application Agreement, her Handbook Agreement or her Second Handbook Agreement, or the Arbitration Policy in the Handbook, or the stand-alone Arbitration Policy that she received. However, it is well established that "one having the ability and opportunity to inform himself of the contents of a writing before he executes it will not be allowed to avoid it by showing that he was ignorant of its contents or that he failed to read it." *Birdwell v. Psimer,* 151 S.W.3d 916, 920 (Tenn. Ct. App. 2004); *Sinclair Ref. Co. v. Martin,* 270 S.W.2d 576, 581 (Tenn. Ct. App. 1954).

### 3. The Arbitration Agreement Is Supported By Consideration.

Under Tennessee law, a mutual exchange of promises constitutes "ample consideration for a contract." *Pyburn v. Bill Heard Chevrolet*, 63 S.W.3d 351, 358 (Tenn. Ct. App. 2001). The Arbitration Agreement in this case is clearly supported by CGLIC's and Plaintiff's "mutual promises" to "arbitrate employment related legal claims" and to be "bound by the decision made by the external, neutral arbitrator." (Stein Decl., ¶¶ 8-9, 11 & Exs. A, D thereto.) *See Wilks*, 241 F.Supp.2d at 863 (holding that the arbitration agreement was supported by consideration because "[b]oth parties were bound to arbitrate claims arising in their relationship").

14
Case 1:10-cv-00008-HSM-WBC   Document 8   Filed 06/24/10   Page 14 of 18   PageID #: 34

The Company's employment and continued employment of Plaintiff also constituted adequate consideration for her agreement to arbitration. *See, e.g., Fisher*, 276 F.Supp.2d at 895; *Cent. Adjustment Bureau v. Ingram*, 678 S.W.2d 28, 33-35 (Tenn. 1984). When Plaintiff signed her Application Agreement on December 7, 2000, she expressly acknowledged that her agreement to arbitrate employment-related disputes was "***in return for . . . receiving an offer of employment.***" (Stein Decl., ¶ 8 & Ex. A thereto)(emphasis added). Further, when Plaintiff received her *You and CIGNA* Handbook and signed her Handbook Agreement, she acknowledged that her agreement to arbitrate was in exchange for her "employment and being eligible to receive increases in compensation and benefits." (Stein Decl. ¶ 9 & Ex. B thereto.) Based on this precise language, the court in *Byrd,* 2002 U.S. Dist. LEXIS 26902 at 4-5, held that "'accepting employment and being eligible to receive increases in compensation and benefits' binds a CIGNA employee to arbitrate employment-related claims."

Plaintiff's Arbitration Agreement is supported by adequate consideration. Therefore, Plaintiff's Agreement is a valid and enforceable contract under Tennessee law.

### B. Plaintiff's Claims Against The Company Fall Squarely Within The Scope Of Her Arbitration Agreement.

The only remaining inquiry is whether Plaintiff's claims fall within the scope of her Arbitration Agreement. By its express terms, Plaintiff's Arbitration Agreement applies to all employment-related "claims, demands or actions under Title VII of the Civil Rights Act if 1964, . . . and any other federal, state or local statute, regulation or common law doctrine, regarding employment discrimination, conditions of employment, or termination of employment." (Stein Decl., ¶ 12 & Ex. D thereto.) Indisputably, Plaintiff's claims against CGLIC fall squarely within the scope of her Agreement.

### C. Plaintiff's Complaint Should Be Dismissed Or This Action Stayed.

Where some, but not all, of a plaintiff's claim are arbitrable, a stay of judicial proceedings pending arbitration is appropriate. However, when all of a plaintiff's claim are arbitrable, a stay is not necessary, and the legal action should be dismissed. *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1276 (6th Cir. 1990); *Prudential MC Asset Holding Co., LLC,* 2004 U.S. Dist. LEXIS 10174 at *33 (E.D. Tenn. 2004) (dismissal is proper when all issues in the action are subject to arbitration.) Alternatively, the Court may stay the action pending resolution of this motion to compel arbitration. *See* 9 U.S.C. §§3, 4. As fully set forth above, a binding and enforceable agreement to arbitrate Plaintiff's claims clearly exists. Accordingly, the Court should order Plaintiff to submit her claims to binding arbitration and dismiss the Complaint or stay this action until arbitration is completed.

### D. Plaintiff Should Be Ordered To Pay CGLIC's Attorney's Fees and Costs

CGLIC notified Plaintiff on *three* occasions that it intended to seek recovery of its fees and costs if she failed to honor her arbitration agreement. The Company told Plaintiff in letters sent by overnight mail on June 10 and sent by email and facsimile on June 21 that it would be required to file a motion to compel arbitration on June 23, 2010 absent confirmation that she would abide by her contractual agreement to arbitrate. Further, CGLIC provided Plaintiff with copies of her Application Agreement, Handbook Agreement, Second Handbook Agreement, the applicable Arbitration Policy, Rules and Procedures, and authority confirming the enforceability of the Arbitration Agreement. Plaintiff rejected the initial requests to confirm her agreement to arbitrate her claims, and ignored the June 21 request that extended the time for response to June 22. Plaintiff's actions violate her Arbitration Agreement, and her actions have directly resulted in CGLIC having to incur unnecessary fees and costs associated with the filing of the instant

16

motion.  Under these circumstances, the Court has the authority and inherent power to order Plaintiff to pay to CGLIC its reasonable fees and costs.  *First Bank v. Hartford Underwriters Ins. Co.*, 307 F.3d 501 (6th Cir. 2002)) (recognizing inherent power of Court to sanction bad-faith conduct in litigation).

## CONCLUSION

Based on the foregoing, CGLIC respectfully requests an order compelling Plaintiff to submit her claims to arbitration and dismissing the Complaint in its entirety or, in the alternative, staying these proceedings.  Defendant also respectfully requests that the Court order Plaintiff to pay the Company its reasonable attorneys' fees and costs based on Plaintiff's unreasonable refusal to honor her Arbitration Agreement.

*s/Cameron S. Pierce*_____
Cameron S. Pierce
LITTLER MENDELSON, P.C.
3344 Peachtree Road, N.E.
Suite 1500
Atlanta, GA 30326-1008
Telephone:  (404) 233-0330
Facsimile:  (404) 233-2361

Counsel for Defendant Connecticut General Life Insurance Co.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| CARMELIA RENEE MARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: 1:10-CV-00008 |
| | ) | |
| CONNECTICUT GENERAL LIFE | ) | DISTRICT JUDGE MATTICE, JR. |
| INSURANCE CO., | ) | MAGISTRATE JUDGE CARTER |
| | ) | |
| Defendant. | ) | |
| | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 23, 2010, a true and correct copy of the foregoing *Defendant's Memorandum Of Law In Support Of Motion To Compel Arbitration And To Dismiss Or To Stay Judicial Proceedings* was served via U.S. Mail upon Plaintiff at the following address:

> Carmelia Renee Martin
> 3123 Lookaway Trail
> Chattanooga, TN 37406

> *s/Cameron S. Pierce*
> Counsel for Defendant
> Connecticut General Life Insurance Co.