# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
### AT CHATTANOOGA

| | | |
|---|---|---|
| CARMELIA RENEE MARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: 1:10-CV-00008 |
| | ) | |
| CONNECTICUT GENERAL LIFE | ) | DISTRICT JUDGE MATTICE, JR. |
| INSURANCE CO., | ) | MAGISTRATE JUDGE CARTER |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF MARJORIE STEIN

1.      All the information set forth in this declaration is based on my personal and first hand knowledge. If called and sworn as a witness, I could and would competently testify to all the statements made below.

2.      I am CIGNA Corporation's Employee Relations Director and have been employed in this capacity since January 7, 2005. I started my professional relationship with CIGNA Corporation in 1984. Specifically, on May 14, 1984, I was hired by CIGNA Corporation as Counsel. Between October 23, 1989 and April 9, 1995, I was employed as CIGNA Corporation's Assistant Vice President of Employee Relations. Thereafter, on April 10, 1995, I became the Vice President of Employee Relations and acted in that capacity until January 7, 2005, when I became the Employee Relations Director.

3.      Connecticut General Life Insurance Company ("CGLIC" or "Company"), one of the CIGNA Companies, is an indirect subsidiary of CIGNA Corporation.

4.     As CIGNA Corporation's Employee Relations Director, I have access to and am generally familiar with the contents of the personnel files of current and former employees of the companies that are subsidiaries or affiliates of CIGNA Corporation, including the personnel file of Ms. Carmelia Renee Martin, the plaintiff in the above-captioned matter.

5.     In 1995, the CIGNA Companies implemented a nationwide arbitration policy requiring the companies that are subsidiaries or affiliates of CIGNA Corporation, and all of their employees, including the employees of CGLIC, to submit their employment disputes to binding arbitration.

6.     The CIGNA Companies' nationwide arbitration policy is set forth in an Employee Handbook, titled *You and CIGNA*. Each CGLIC employee has received a copy and/or has access to the current CIGNA Companies' Employee Handbook through the Company's Intranet. Each employee is required to confirm in writing that he or she has received and will review the Handbook's contents.

7.     CGLIC hired Ms. Martin as a Data Entry Operator in its office in Chattanooga, Tennessee on December 11, 2000. Ms. Martin's job title was changed to Data Entry Clerk on January 7, 2005, and her employment was terminated on June 8, 2009.

8.     Based on Ms. Martin's personnel records, she completed an application for employment with the Company on December 7, 2000. Ms. Martin signed her employment application directly under the following language:

> I AGREE THAT IN RETURN FOR BEING CONSIDERED FOR EMPLOYMENT AND/OR RECEIVING AN OFFER OF EMPLOYMENT, I WILL RESOLVE ANY DISPUTE ABOUT MY CANDIDACY FOR EMPLOYMENT, EMPLOYMENT OR CESSATION OF EMPLOYMENT EXCLUSIVELY THROUGH THE INTERNAL AND EXTERNAL EMPLOYMENT DISPUTE RESOLUTION PROCESSES OF MY EMPLOYER, WHICH INCLUDE FINAL AND BINDING ARBITRATION WITH A NEUTRAL ARBITRATOR. I UNDERSTAND THAT MY

2

EMPLOYER ALSO AGREES TO FOLLOW THE DISPUTE
RESOLUTION PROCESSES AND THAT COPIES OF THE
POLICIES AND PROCEDURES DESCRIBING THE DISPUTE
RESOLUTION PROCESSES ARE AVAILABLE TO ME.

Ms. Martin's Employment Application is currently maintained in Ms. Martin's personnel
file, and a true and exact copy of Ms. Martin's Employment Application is attached
hereto as Exhibit A.

       9.     At the start of her employment, Ms. Martin signed a form
acknowledging her receipt of the July 1998 *You and CIGNA* Employee Handbook. The
form that Ms. Martin signed, which is entitled "Employee Handbook Receipt and
Agreement," states, in pertinent part:

> I understand that by accepting employment and being eligible to receive
> increases in compensation and benefits, I am agreeing to the following
> two important terms of my employment described in *You and CIGNA*:
> (1) my employment can be terminated by me or my employer at any
> time for any reason -- therefore, my employment is at the will of either
> party, and (2) I will use the Company's internal and external
> employment dispute resolution processes to resolve legal claims against
> the Company -- therefore rather than go to court . . . I will submit my
> employment related legal claims except workers' compensation and
> unemployment compensation to final and binding neutral third party
> arbitration. I understand further that these two terms of my employment
> replace and supercede any prior agreement concerning these terms and
> cannot be changed except in writing signed by me and the President of
> the Company.

Ms. Martin's "Employee Handbook Receipt and Agreement" is currently maintained in
Ms. Martin's personnel file, and a true and exact copy of that document is attached hereto
as Exhibit B.

      10.    The first page of the July 1998 *You and CIGNA* Handbook (which
Ms. Martin received) states (in pertinent part):

> This handbook contains important information about your contract of
> employment as well as policies and programs that relate to you in your

3

work at CIGNA and about benefits for which you may be eligible. *The terms of your employment mentioned in this Handbook are legally binding, and you may wish to review these terms with your legal counsel.*

***

This handbook contains only two terms of your employment. . . . The first is that your employment is not for any fixed period of time. . . . The second is that by accepting employment and being eligible to receive increases in compensation and benefits, you agree that you will not go to court or a government agency for a hearing to decide an employment-related claim. Instead, you will resolve all employment related legal disputes (except worker's compensation and unemployment compensation) by going to a neutral third-party arbitrator. *Regardless of what anyone may have told you or you may have read before you were hired or after, these two terms of your employment are the full and complete agreement between you and the Company concerning these terms and cannot be changed except by a written agreement between you and your employer signed by the President of the Company.*

(Emphasis in original). Attached as Exhibit C is a true and exact copy of the first page of the July 1998 *You and CIGNA* Handbook.

      11.    The Company's Employment Dispute Resolution Process is described on pages 28-31 of the July 1998 *You and CIGNA* Handbook. True and exact copies of pages 28-31 of the July 1998 *You and CIGNA* Handbook are attached hereto as Exhibit D.

      12.    With respect to the arbitration component of the Dispute Resolution Process, the July 1998 *You and CIGNA* Handbook provides (in pertinent part) that:

*Mutual promises by both the employee and the employer to arbitrate employment related legal claims is a term and condition of an employee's employment and arbitration must be used rather than going to court to enforce legal rights and claims . . .*

The agreement to arbitrate applies to serious employment-related disagreements and problems, which are those that concern a right,

4

privilege, or interest recognized by applicable law. Such serious disputes include claims, demands or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Civil Rights Act of 1991, the Equal Pay Act, the Age Discrimination in Employment Act, the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act, the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Family and Medical Leave Act, and any other federal, state or local statute, regulation or common law doctrine, regarding employment discrimination, conditions of employment, or termination of employment. . . .

(*See* Exhibit D)(emphasis in original).

13.     On December 11, 2000, (which was Ms. Martin's first day of employment with CGLIC), Ms. Martin signed another receipt form titled "Employee Policies Receipt," in which she acknowledged receiving a copy of the Company's arbitration policy. This December 11, 2000 receipt form is currently maintained in Ms. Martin's personnel file. Attached as Exhibit E is a true and exact copy of the receipt form that Ms. Martin signed on December 11, 2000, and the arbitration policy in effect in 2000.

14.     In November 2005, the CIGNA Companies distributed an updated CIGNA Employee Handbook to all employees of the CIGNA Companies electronically, by way of an email that contained a hyperlink to one of its web pages, titled *Your CIGNA Life*. Once an employee was connected to that web page, a message was disclosed to the employee regarding the updated Employee Handbook that contained the terms and conditions of employment as well as the employer-employee policies and procedures. The *Your CIGNA Life* webpage contained a hyperlink that if clicked upon, disclosed the contents of CIGNA Employee Handbook in printable PDF format. The *Your CIGNA Life* webpage also contained a second hyperlink that connected the employee to an Affirmation Form.

5

15.     Each full-time employee was required to complete the Affirmation Form to disclose his or her assent to the terms and conditions of employment as set forth in the CIGNA Employee Handbook. To complete the Affirmation Form and receive a transaction receipt, each employee was required to type his or her full name in a blank box provided on that form and click on a "YES" button. Under the box in which each employee's name was to be typed, eight short paragraphs appeared, which set forth as follows in pertinent part:

By clicking "YES" in the box below:

- I acknowledge that I have received or reviewed the updated (November 2005) CIGNA Employee Handbook, which outlines the policies, procedures and programs that are available and applicable to all of the CIGNA companies' employees.

    ****

- I agree any dispute between **CIGNA** and me arising out of or relating to my candidacy for employment, employment, or termination of employment with **CIGNA** (with the exception of workers compensation claims ERISA claims and administrative agency charges) shall be resolved under **CIGNA's** Employment Dispute Arbitration Program which includes final mandatory binding arbitration. I understand that any such Arbitration will be conducted pursuant to the **CIGNA** Employment Dispute Arbitration Rules and Procedures in effect at the time such arbitration is commenced.

16.     Once an employee clicked on the "YES" button, the full name, time, and date of the employee's act was electronically memorialized, and the transaction was completed. After the completion of the transaction, a pop-up message would be displayed to the employee. The pop-up message allowed the employee to print a receipt in which the employee's full name, and the date and time of the employee's transaction were reflected. The pop-up message provided as follows:

6

> We have successfully received your signed Employee Handbook receipt. Your time and cooperation is appreciated. Thank you. We recommend you print a copy for your records at this time. OK to print now?

Regardless of whether the employee printed the receipt, an electronic record was created and a finalized Receipt Page was displayed to the employee. Thereafter, the electronic receipts of the employee responses were retrieved and/or accessed by CIGNA Companies administrative staff and maintained by the CIGNA Companies.

17.     CGLIC's electronic records reflect that on November 9, 2005 at 3:13:56 P.M., Ms. Martin, who was at the time a full-time employee, properly completed the Affirmation Form discussed in paragraphs 14 through 16 of this declaration by following the procedure set forth in those paragraphs. This November 9, 2005 electronic Receipt Page is currently maintained in Ms. Martin's personnel file, and a true and exact copy of that document is attached hereto as Exhibit F.

18.     Attached as Exhibit G to this declaration is a true and correct copy of the CIGNA Companies' *Employment Dispute Arbitration Policy* and *Employment Dispute Arbitration Rules And Procedures* that were in effect in June of 2009.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing eighteen (18) paragraphs are true and correct.

Executed on June 23, 2010.

MARJORIE STEIN

7

# EXHIBIT A

# EMPLOYMENT APPLICATION

PLEASE PRINT

| NAME (First) | (Middle) | (Last) | (Area Code) TELEPHONE NO. | E-MAIL |
|---|---|---|---|---|
| Carmelia | Renee | Martin | 423 624-00N | |

| ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 3123 Lookaway Trail | Chatt | TN | 37406 |

| If you are not a U.S. Citizen, do you have a legal right to remain and work in the U.S.A.? ☐YES ☐NO | ☐ VISA Type ☐ VISA Number | Have you previously applied to a CIGNA* company? When? Where? Which company? ☑ Job Fair |
|---|---|---|

Have you ever been employed by a CIGNA* company? If yes, list company, department and positions, dates of employment, location and reason for leaving.

☐ YES ☑ NO

| How were you referred to CIGNA*? (Please check) | ☐ Direct Application ☐ Employee Referral _____ (NAME) | ☐ Campus Recruiting ☑ Employment Agency ☐ Community Organization _____ (NAME) | ☐ Job Fair | ☐ Newspaper ☐ Magazine | ☐ Television ☐ Radio ☐ Internet |
|---|---|---|---|---|---|

| SALARY DESIRED ☐ per hour ☐ per week ☑ per year 7.50 | POSITION OR TYPE OF WORK DESIRED Any Position | WHEN ARE YOU AVAILABLE TO START WORKING? Now |
|---|---|---|

| WORK SCHEDULE DESIRED (Check more than one box if appropriate) ☑ Full-Time ☐ Part-Time ☐ Temporary ☐ Summer Only ☐ Co-op Hours ____ | WOULD YOU BE WILLING TO RELOCATE? ☑ Yes If yes, where? ☐ No |
|---|---|

*FOR PROPER EVALUATION, IT IS ESSENTIAL THAT **ALL OF THE FOLLOWING QUESTIONS** BE ANSWERED ON THIS APPLICATION.*

## EDUCATIONAL BACKGROUND

| Name | City | State | Major Course of Study | Circle Last Year Successfully Completed | Diploma or Degree Awarded | Scholastic Average |
|---|---|---|---|---|---|---|
| High School or Preparatory Riverside | Chatt | TN | | (1) 2 3 4 | ✓ | |
| College | | | | 1 2 3 4 | | |
| College | | | | 1 2 3 4 | | |
| Additional Education | | | | | | |
| | | | | | | |
| | | | | | | |

## ADDITIONAL SKILLS AND ACTIVITIES

| TYPING SPEED 40 WPM | DATA ENTRY 40, TI WPM | COMPUTER EXPERIENCE: List hardware and software MicroSoft Word 6.0 Excel 5.0 |
|---|---|---|

LIST EXTRACURRICULAR ACTIVITIES OR HONORS

| | |
|---|---|
| Please list additional skills, technical or professional knowledge that you feel would enhance this application for employment. | List any licenses (with expiration dates), certificates, publications or professional achievements that would support this application for employment. |
| | |
| | |
| | |
| | |

*CIGNA refers to CIGNA Corporation and its subsidiaries. Most employees are employed by subsidiaries.

# EMPLOYMENT HISTORY

*IMPORTANT* List every employment, including part-time, whether or not it seems relevant to the position for which you are applying. If a recent graduate, please indicate summer employment. Please ask if you need additional paper.

## PRESENT OR LAST EMPLOYER

**NAME OF EMPLOYER** Covergys

**AREA CODE** | **TELEPHONE N**

**ADDRESS** | **CITY** Chatt | **STATE** Tn | **ZIP CODE**

| DATES OF EMPLOYMENT | TITLE OF POSITION Call Specialist | NAME AND TITLE OF SUPERVISOR Debbie Davis |
|---|---|---|
| FROM MO. 7&9 YR. 99 | DESCRIPTION OF DUTIES, RESPONSIBILITIES AND SIGNIFICANT ACCOMPLISHMENTS | |
| TO MO. 04 YR. 00 | Made reservations for motel 6 Explained locations of motel to clients | |
| SALARY | Resolved Customer Complaints | |
| STARTING 7:10 | Data entry of Pertinent information | |
| ENDING 8:00 | Verified Credit Card data. | |
| NO. OF HOURS WORKED WEEKLY 40 | REASON FOR LEAVING Job play out move to Red roof Inn. | |

## NEXT PREVIOUS EMPLOYER

**NAME OF EMPLOYER** Buster Brown Apparel, Inc.

**AREA CODE** | **TELEPHONE NO**

**ADDRESS** 2000 Stewart Street | **CITY** Chatt | **STATE** Tn | **ZIP CODE** 37406

| DATES OF EMPLOYMENT | TITLE OF POSITION Boarder | NAME AND TITLE OF SUPERVISOR Ken anderson |
|---|---|---|
| FROM MO. 6m YR. 87 | DESCRIPTION OF DUTIES, RESPONSIBILITIES AND SIGNIFICANT ACCOMPLISHMENTS | |
| TO MO. 11 YR. 97 | Operated boarding machine Pressed, Counted, rolled and stacked stocks | |
| SALARY | | |
| STARTING 7:00 | | |
| ENDING 11:00 | | |
| NO. OF HOURS WORKED WEEKLY 40 | REASON FOR LEAVING Down side | |

## NEXT PREVIOUS EMPLOYER

**NAME OF EMPLOYER** Willwear Hosiery mill

**AREA CODE** | **TELEPHONE NO.**

**ADDRESS** | **CITY** Chatt | **STATE** Tn | **ZIP CODE** 37406

| DATES OF EMPLOYMENT | TITLE OF POSITION Willwear Hosiery mill Boarder | NAME AND TITLE OF SUPERVISOR Faye |
|---|---|---|
| FROM MO. 5 YR. 62 | DESCRIPTION OF DUTIES, RESPONSIBILITIES AND SIGNIFICANT ACCOMPLISHMENTS | |
| TO MO. 6 YR. 87 | Operated boarding machine Pressed, Counted, rolled and Stacked Stocks | |
| SALARY | | |
| STARTING 5:45 | | |
| ENDING 6:50 | | |
| NO. OF HOURS WORKED WEEKLY | REASON FOR LEAVING Better Job offer | |

## ADDITIONAL DETAILS

Please explain any lapses in employment or provide additional information which would be helpful to us and relevant to this application.

## MILITARY EXPERIENCE

| U.S. MILITARY BRANCH | ACTIVE DUTY ENTRY DATE | DISCHARGE DATE | TRAINING SPECIALTY |
|---|---|---|---|
| | | | |

In order to be considered for employment at CIGNA*, you will required to:

- provide proof of U.S. citizenship or the authorization to work in the United States in accordance with the Immigration Reform and Control Act of 1986, temporary visas, I-20, work authorization (I-765), or "green cards;"

- successfully pass an employment health examination, if required; and

- successfully pass tests for the presence of illegal drugs and alcohol;

- successfully pass a background check.

The types of checks may include, but are not limited to, criminal, verification of residence, credit, motor vehicle and state insurance records. Should CIGNA* decide to offer you a position, you would be required to sign an Authorization for Release form. Your actual employment would depend on satisfactory reports from these checks.

Your signature on this application grants CIGNA* permission to contact your schools, professional organizations or former employer(s), and releases them from any liability resulting from providing the information requested.

I grant permission to CIGNA* to contact my present employer. Please check one:  ☑ Yes    ☐ No

CIGNA* reserves the right to test any employee for the illegal presence of drugs or alcohol.

Should you become an employee of CIGNA* and receive any overpayment of salary or benefits (including short-term disability), CIGNA* may recover overpayments by taking deductions from future paychecks or any unused vacation days.

**I UNDERSTAND THAT NOTHING IN THIS APPLICATION AND NOTHING AT ANY TIME COMMUNICATED TO ME ABOUT MY RIGHTS AS AN EMPLOYEE, REGARDLESS OF SOURCE, LIMIT IN ANY WAY MY RIGHT TO RESIGN FROM MY EMPLOYMENT WITH A CIGNA* COMPANY AT ANY TIME FOR ANY REASON OR MY EMPLOYER'S RIGHT TO WITHDRAW AN OFFER OF EMPLOYMENT, OR TO TERMINATE MY EMPLOYMENT AT ANY TIME FOR ANY REASON.**

**I AGREE THAT IN RETURN FOR BEING CONSIDERED FOR EMPLOYMENT AND/OR RECEIVING AN OFFER OF EMPLOYMENT, I WILL RESOLVE ANY DISPUTE ABOUT MY CANDIDACY FOR EMPLOYMENT, EMPLOYMENT OR CESSATION OF EMPLOYMENT EXCLUSIVELY THROUGH THE INTERNAL AND EXTERNAL EMPLOYMENT DISPUTE RESOLUTION PROCESSES OF MY EMPLOYER, WHICH INCLUDES FINAL AND BINDING ARBITRATION WITH A NEUTRAL ARBITRATOR. I UNDERSTAND THAT MY EMPLOYER ALSO AGREES TO FOLLOW THE DISPUTE RESOLUTION PROCESSES AND THAT COPIES OF THE POLICIES AND PROCEDURES DESCRIBING THE DISPUTE RESOLUTION PROCESSES ARE AVAILABLE TO ME.**

I agree to fulfill all of the requirements listed above and understand that any misrepresentation or omission of facts on this Employment Application is sufficient cause for my disqualification from employment or my dismissal.

I certify that all of the information provided in this employment application is correct.

Date: 12-7-00                                  Signature of Applicant: Carmelia Martin

All phases of employment with CIGNA* are based strictly upon qualifications of the individual as related to the work requirements of the position. This policy is applied without regard to race, gender, color, religion, national origin, age, disability, veteran status, marital status or sexual orientation.

*CIGNA refers to CIGNA Corporation and its subsidiaries. Most employees are employed by subsidiaries.

HH-604734b  Rev. 1/99

# EXHIBIT B

## EMPLOYEE HANDBOOK RECEIPT AND AGREEMENT

*To Be Placed In Employee's*
*Personnel File — Payroll &*
*Personnel Records Department*

This is to acknowledge that I have received my copy of the July 1998 employee handbook, *You and CIGNA*. I understand that by accepting employment and being eligible to receive increases in compensation and benefits, I am agreeing to the following two important terms of my employment described in *You and CIGNA*: (1) my employment can be terminated by me or my employer at any time for any reason – therefore, my employment is at the will of either party, and (2) I will use the Company's internal and external employment dispute resolution processes to resolve legal claims against the Company – therefore rather than go to court or to a government agency for a hearing to decide my legal claim, I will submit my employment related legal claims except workers' compensation and unemployment compensation to final and binding neutral third party arbitration. I understand further that these two terms of my employment replace and supersede any prior agreement concerning these terms and cannot be changed except in writing signed by me and the president of the Company.

Carmelia Martin
_____
**Print Name**

Carmelia Martin
_____
**Signature**                              **Date**

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
_____
**Social Security Number**

*(\*The term "the Company" means the particular CIGNA subsidiary or company that employs you.)*

77

Case 1:10-cv-00008-HSM-WBC   Document 8-3   Filed 06/24/10   Page 13 of 42   PageID #: 77

# EXHIBIT C

This handbook applies to all U.S. based regular full-time and regular part-time employees of the CIGNA* companies identified on the last page of this handbook. This handbook contains important information about your contract of employment as well as policies and programs that relate to you in your work at CIGNA and about benefits for which you may be eligible. *The terms of your employment mentioned in this Handbook are legally binding, and you may wish to review these terms with your legal counsel.*

Policies, programs and benefit plans in effect for the Company which employs you will apply in any particular situation. The policies and programs are provided to your manager or supervisor who will provide information to you about the details of these policies and programs. Descriptions and information about benefit plans are usually distributed directly to you at your home or at your work location. The plans, not this handbook, control your benefits. As circumstances and competitive conditions change, CIGNA reserves the right to change any or all of such policies, programs and benefit plans in whole or in part at any time, with or without notice to you. However, any benefit entitlement to which you have vested rights (including the right to finish an arbitration which has been started) as of the date of the change will not be taken away as a result of any change.

This handbook contains only two terms of your employment. They are very important. The first is that your employment is not for any fixed period of time. Just as you can terminate your employment, at any time for any reason, the Company can terminate your employment at any time for any reason. The second is that by accepting employment and being eligible to receive increases in compensation and benefits, you agree that you will not go to court or a government agency for a hearing to decide an employment-related claim. Instead, you will resolve all employment related legal disputes (except worker's compensation and unemployment compensation) by going to a neutral third party arbitrator. *Regardless of what anyone may have told you or you may have read before you were hired or after, these two terms of your employment are the full and complete agreement between you and the Company concerning these terms and cannot be changed except by a written agreement between you and your employer signed by the President of the Company.*

---

* *The terms "CIGNA" and "CIGNA companies" as used throughout this handbook mean CIGNA Corporation and/or its subsidiaries. CIGNA Corporation owns the subsidiaries for which most employees work. The term "the Company" means the particular CIGNA subsidiary that employs you.*

# EXHIBIT D

# E. WORKING TOGETHER

**1. EMPLOYEE RELATIONS**

CIGNA strives to treat its employees fairly and equitably.

*Documentation*

A good manager maintains appropriate documentation concerning employment-related decisions and actions and clearly communicates those decisions and actions to affected employees. CIGNA maintains formal methods for employees to bring employment-related problems or concerns to the attention of management.

CIGNA strongly believes that third party intervention into dealings between management and its employees is not in the best interests of either its employees or CIGNA. CIGNA will directly oppose, within the boundaries of the law, any attempt through third party intervention to limit an individual employee's right to deal directly with management.

CIGNA's human resources staff, with support from CIGNA's counsel, develop procedures and practices to maintain a positive working environment, to encourage communication between employees and management, to resolve employment-related problems and to deal with third party intervention.

*Third Party Intervention*

"Third party intervention" means an attempt or any other activity by an organization which may lead to a third party representing CIGNA company employees to CIGNA management, particularly where such representation involves wages, benefits or working conditions. Typically, these attempts are made by labor organizations or unions, but they may also be made by professional associations, external and social pressure groups or internal employee groups.

**2. EMPLOYMENT DISPUTE RESOLUTION PROGRAM**

To help CIGNA maintain a positive work environment, the Employment Dispute Resolution Program was developed. This program consists of three processes which *are mandatory* and were designed to provide employees with an effective arena for resolving work-related conflicts while improving the lines of communication. The two internal processes and one external process are summarized below:

28

*Internal*

◆ *Speak Easy Process* — The Speak Easy Process is comprised of three phases. Phase I encourages an employee to discuss concerns directly with his or her manager. If the issue cannot be resolved at this level, Phase II provides for a review of issues to be conducted and/or managed by the Division Speak Easy Coordinator. Should the issue not be resolved at Phase II, the employee can request Phase III, by sending a request to the division head. A representative of the division head will coordinate the investigation and resolution. Please see the Speak Easy form (which may be obtained from your human resources representative) for instructions.

◆ *Peer Review Process* — The Peer Review Process features a panel of employees to listen to the facts and witnesses concerning a complaint and render an impartial decision. As an alternative, the employee may choose to have a division head review as the final step. This process is limited to issues that fall within the scope of the Peer Review Process including interpretation or application of company, divisional, departmental or unit policies, work rules and established practices. The Peer Review panel **cannot** change policy, work rules or practices, pay levels, work schedules, performance appraisals or specific business decisions nor grant monetary relief.

Step I enables the employee to address the issue with his or her immediate supervisor. If the employee is not satisfied with the outcome, Step II allows the employee to have his or her concern reviewed by the next level of supervision. If the employee disagrees with the Step II decision, in Step III, he or she may appeal to either the division head or a Peer Review panel. The Peer Review panel consists of five trained panelists including supervisors, exempt and non-exempt employees. Three of the panelists will be employees in the same category as the employee requesting the peer review; for example, non-exempt employees. The Step III decision is final and binding on the employer. Please see the Employment Dispute Resolution Program (which may be obtained from your human resources representative) for more details.

29

An employee can use either the Speak Easy or the Peer Review Process a the internal step in resolving an issue. An employee may not use both processes.

*External*

♦ *Arbitration* — If an employee is not satisfied with the result of either the Speak Easy Process or the Peer Review Process, and the issue falls under the scope of the Arbitration Policy, he or she may request arbitration, which is the last step of the Employment Dispute Resolution Program. The Arbitration Policy was designed as a faster, less expensive substitute for going to court. *Mutual promises by both the employee and the employer to arbitrate employment related legal claims is a term and condition of an employee's employment and arbitration must be used rather than going to court to enforce legal rights and claims (or going to a government agency which in some states acts like a court in judging claims).*

The agreement to arbitrate applies to serious employment-related disagreements and problems, which are those that concern a right, privilege, or interest recognized by applicable law. Such serious disputes include claims, demands, or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Civil Rights Act of 1991, the Equal Pay Act, the Age Discrimination in Employment Act, the Employee Retirement Security Act of 1974, the Fair Labor Standards Act, the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Family and Medical Leave Act, and any other federal, state, or local statute, regulation, or common law doctrine, regarding employment discrimination, conditions of employment, or termination of employment. If the law in the state in which an employee works provides for a government agency hearing to decide questions of law related employment discrimination claims, then the agreement of the employee and the employer is that arbitration must be used instead of a government agency hearing to decide the claim or going to court and having a jury.

30

Arbitration is conducted by a neutral third party who is an expert in employment matters and it is administered by the American Arbitration Association (AAA). Except for a filing fee, the costs of the arbitration will be paid by the Company unless the employee wants to share in the costs.

The employee and the Company agree to be bound by the decision made by the external, neutral arbitrator. The arbitrator chosen by the employee and employer in accordance with the employer's arbitration rules and procedures will be the sole and exclusive judge of the proper interpretation of the agreement of the parties as well as the rules and procedures of the arbitration process. The arbitrator will have all of the power a judge hearing the dispute would have so that the significant differences between going to arbitration and going to court are that the process will be much faster, less expensive and there will be no jury.

To begin the Arbitration process, an employee should submit a demand for arbitration to the Corporate Employee Relations Department within 30 calendar days after receiving the Peer Review Step III or Speak Easy Phase III decision. The Arbitration Rules and Procedures can be obtained through your local human resources representative.

For further information regarding any of the above processes, please see your local human resources representative.

### 3. EMPLOYEE ASSISTANCE PROGRAM (EAP)

CIGNA's Employee Assistance Program is a confidential assessment and referral program staffed by MCC Behavioral Care, Inc. professionals. If you have a personal problem that is unresolved or is affecting your work performance, you may use the Employee Assistance Program (EAP). The EAP is also available to supervisors for workplace issues as well as crisis intervention. The program may be used by family members whose problems may also have an adverse effect on you and your work. Retired employees may also use the program.

31

# EXHIBIT E

## EMPLOYEE POLICIES RECEIPT

This is to acknowledge that I have received my copies of the CIGNA HealthCare Attendance Policy, CIGNA HealthCare Overtime Policy, CIGNA Employment Dispute Arbitration Policy, and "Doing Things the Right Way" brochure. I will take the time to review the material which I have been told includes information on policies for employees of CIGNA HealthCare.

_Carmelia Martin_
Print Name

_Carmelia Martin_                    12-11-00
Signature                            Date

_413 - 21 - 5551_
Social Security Number

_To be placed in employee's personnel file._

# CIGNA HEALTHCARE DIVISION
## EMPLOYMENT DISPUTE ARBITRATION POLICY

A.    **STATEMENT OF POLICY**

In the interest of fairly and quickly resolving employment-related disagreements and problems, and applying the important public policies expressed in the Federal Arbitration Act, 9 U.S.C. Sec. 1 et seq., CIGNA Healthcare Division's policy is that arbitration by a neutral third-party is the required and final means for the resolution of any employment related legal claim not resolved by the Division's internal dispute resolution processes. Both the Division and the employee* will be bound by any decision made by a neutral arbitrator. If the employee or the Division do not abide by the arbitrator's decision, either party may go to court to enforce the arbitrator's decision, but arbitration must be used before going to court. This policy is intended to prevent an employee from going to court over employment related disputes; it is not intended to take away any other rights. This policy does not prevent, prohibit or discourage an employee from filing a charge with, participating in an investigation of, or otherwise seeking redress from, the National Labor Relations Board (NLRB) Regional Office; the Equal Employment Opportunity Commission ("EEOC"), or any other state or federal agency.

As a part of the arbitration process, an employee may request that the dispute be submitted to voluntary mediation before it is submitted to arbitration. If the Division agrees that mediation might resolve the dispute, a mediation will be conducted under the Division's Arbitration Rules and Procedures.

---

* Throughout this Policy "employee" includes former CIGNA company employees and applicants for employment. As used herein "CIGNA company" means CIGNA Corporation or any of its subsidiaries. "Division" refers to CIGNA Healthcare Division and specifically the employer within the Division that employs the employee.

Case 1:10-cv-00008-HSM-WBC   Document 8-3   Filed 06/24/10   Page 23 of 42   PageID #: 87

This policy is part of the employment relationship between an employee and CIGNA Healthcare Division. It is not, however, a guarantee that employment will continue for any specified period of time or end only under certain conditions.

**Nothing contained in this policy limits in any way an employee's right to resign from employment with any CIGNA company at any time for any reason or any CIGNA company's right to terminate employment at any time for any reason.**

This policy cannot be changed except in writing by the Vice President, Corporate Employee Relations. No change will affect a pending claim unless the employee agrees to the change in writing signed by the employee.

**B.    SCOPE OF THE ARBITRATION PROCEDURE**

This policy covers only serious employment-related disagreements and problems, which are those that concern a right, privilege or interest recognized by applicable law. Such serious disputes include claims, demands or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Civil Rights Act of 1991, the Equal Pay Act, the Age Discrimination in Employment Act, the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act, the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Family and Medical Leave Act, and any other federal, state or local statute, regulation or common law doctrine, regarding employment discrimination, conditions of employment or termination of employment. This policy is intended to substitute final and binding arbitration, which is quick, inexpensive and fair, for going to court, which is slow and expensive. This policy does not prevent, prohibit or discourage an employee from filing a charge with, participating in an investigation of, or otherwise seeking redress from, the National Labor Relations Board ("NLRB") Regional Office; the Equal Employment Opportunity Commission ("EEOC"), or any other state or federal agency.

-2-

This policy does not require that CIGNA Healthcare Division start the arbitration process before taking disciplinary action of any kind, including termination. This policy does, however, require that an employee who disagrees with any disciplinary action or other adverse employment decision, demand arbitration in accordance with the Division's Employment Dispute Arbitration Rules and Procedures rather than go to court, if the matter has not been resolved under the Division's internal dispute resolution processes.

If the Division has a legal claim against an employee, the Division must utilize the Employment Dispute Arbitration Rules and Procedures which are a part of this policy, rather than go to court.

## C.    STARTING THE ARBITRATION PROCEDURE

An employee may obtain a copy of the Arbitration Rules and Procedures from a human resource representative at any time.  An employee who wants to start the Arbitration Procedure should submit a demand for arbitration within thirty (30) calendar days after receiving the Step III decision in the internal dispute resolution process; however, all demands must be within the time periods otherwise required by applicable law.  The demand letter must be sent by certified mail to the Corporate Employee Relations Department, CIGNA Companies, 48th floor, Two Liberty Place, 1601 Chestnut Street, Philadelphia, PA 19192, along with (1) a check or money order for $100.00 payable to the Connecticut General Life Insurance Company ("CGLIC"), (2) a statement of the issue(s) to be resolved and the relief requested, (3) a copy of the Step III written decision, (4) the full mailing address to which the employee wants all further correspondence about the dispute sent, and (5) a statement indicating whether the employee will be represented by an attorney (an employee can change his/her decision about legal representation by an attorney at any time provided that fourteen (14) calendar days notice of the change is given in writing to the arbitrator and the Division).

In the event the Division indicates a willingness to attempt to resolve the matter through mediation and the employee elects to submit the dispute to mediation before going to arbitration, the employee must submit a request for mediation within seven (7) calendar days after receiving notice that the Division is willing to attempt mediation.  The

employee must return the mediation request form to the address set forth above in this Section C.

The employee will be sent a copy of CIGNA Healthcare Division's Arbitration Rules and Procedures. The Rules and Procedures are based on and generally follow the Model Employment Arbitration Procedures of the American Arbitration Association ("AAA").

The $100.00 sent by the employee will be used to pay a part of the administrative fees charged by the AAA. The remainder of the fees charged by AAA are substantially more than $100.00 and will be paid by CIGNA Healthcare Division.

Revised 3/1/99 (final)

# EXHIBIT F

**CARMELIA MARTIN** has acknowledged the following and clicked "YES" on 11/09/2005 3:13:56 PM.

By clicking "YES" in the box below:

- I acknowledge that I have received or reviewed the updated (November 2005) **CIGNA** Employee Handbook, which outlines the policies, procedures and programs that are available and applicable to all of the **CIGNA** companies` employees.

- I understand that a full text of (or additional detail about) specific policies, procedures and programs, are posted on **CIGNA**`s websites.

- I understand that I may request a paper copy of the Handbook from my HR representative.

- I understand that employment with **CIGNA** is at-will; that is, it is not for a specified period of time and can be terminated at any time for any reason, with or without cause or notice, by me or by **CIGNA**, and that no oral or written statement can alter that status.

- I understand that I must abide by the **CIGNA** Code of Ethics and Compliance; the HIPAA, privacy and confidentiality policies; the equal employment opportunity and anti-harassment policies, and the illegal drugs policy.

- I understand that I must protect **CIGNA**`s intellectual property, and that the Company may monitor my use of Company property, such as telephones and computers, including reading e-mails.

- I agree any dispute between **CIGNA** and me arising out of or relating to my candidacy for employment, employment, or termination of employment with **CIGNA** (with the exception of workers compensation claims ERISA claims and administrative agency charges) shall be resolved under **CIGNA**`s Employment Dispute Arbitration Program which includes final mandatory binding arbitration. I understand that any such Arbitration will be conducted pursuant to the **CIGNA** Employment Dispute Arbitration Rules and Procedures in effect at the time such arbitration is commenced.

- I understand that, other than my at-will status and my agreement to arbitrate, **CIGNA** may revise or modify programs, policies and benefits plans from time to time, but that those revisions will be communicated in writing.

# EXHIBIT G

# CIGNA COMPANIES'
## EMPLOYMENT DISPUTE ARBITRATION RULES AND PROCEDURES

**An employee\* may obtain a copy of the Companies' Employment Dispute Arbitration Rules and Procedures from a human resource representative at any time.**

**The Arbitrator shall apply these Rules and Procedures strictly. The American Arbitration Association's ("AAA") National Rules for the Resolution of Employment Disputes will apply only where these Rules and Procedures are silent, and in no case shall any AAA rule be applied that is in conflict with or contrary to the substance or intent of these Rules and Procedures. In no case shall an arbitrator apply the Federal Rules of Civil Procedure or any other Local, State or Federal rules of court procedure.**

1.  **STARTING THE ARBITRATION PROCESS**

    A party who wants to start the arbitration process must submit a written demand for arbitration by certified and first-class mail sent, in the case of an employee-initiated claim, to the Employee Relations Department, CIGNA Companies, 5th Floor, Two Liberty Place (TL05S), 1601 Chestnut Street, Philadelphia, PA 19192, along with a check or money order in the amount of one-hundred fifty dollars ($150.00) payable to "CIGNA Companies" as an initial filing fee. In those jurisdictions where the applicable federal court filing fee is or would be less than $150.00, the employee must include the same amount as the applicable federal court filing fee. The filing fee may be subject to waiver or reimbursement upon decision by the arbitrator consistent with the standards applicable to proceeding in forma pauperis in the federal courts. In the case of a Company-initiated claim, the employee is not required to pay any filing or other administrative fee. Rather, the Company shall notify the employee of its initiation of the arbitration process by serving a demand for arbitration upon the employee by certified and first class mail to the employee's last known home address. In addition to any required filing fee, any demand for arbitration by either party shall include: (1) a statement of the issue(s) to be resolved and the relief requested, (2) a copy of the final written decision in the internal dispute resolution process (if applicable), (3) the full mailing address to which the initiating party wants all future correspondence about the dispute sent, and (4) a statement indicating whether the initiating party will be represented by an attorney. The demand must be sent within the time limits that would apply to the party's claim if it were being resolved in court and not by arbitration. In the case of a court ordered Arbitration, a demand for Arbitration should be filed in accordance with these Rules and Procedures within thirty (30) calendar days from the date of entry of the courts' order; However, such demand cannot be filed after six (6) months. If the Arbitration is an appeal from a Speak Easy, the demand should be submitted within thirty (30) calendar days after receiving the final decision in the internal Speak Easy Process.

    After an employee has requested information, Employee Relations will send 2nd day air, a copy of

---

\* Throughout these Rules and Procedures (except in paragraph 11 dealing with paid time off), "employee" includes current and former CIGNA company employee(s) and applicants for employment.

1

the Arbitration Policy, rules and procedures and Fee Sharing Form. Once the demand is received, Employee Relations will send an acknowledgement and a statement indicating whether the Company is willing to attempt mediation before arbitration if the employee requested mediation. If the Fee Sharing Form is not returned within seven (7) calendar days of its receipt, it will be presumed that the employee has no interest in paying one-half of all fees associated with this arbitration process.

Generally within fifteen (15) calendar days after the Company receives the demand, the Company will file the initiating party's demand with the office of the American Arbitration Association ("AAA") closest to where the facts occurred which gave rise to the dispute, together with the applicable administrative fee payable to the AAA.

A party may file any counterclaim against the initiating party that would exist if the dispute were in court. The counterclaim shall set forth the nature of the claim, the amount in controversy, if any, and the remedy sought. Each party seeking resolution of its, his or her claims pursuant to an agreement to arbitrate under these Rules and Procedures must proceed individually. There shall be no class or representative actions permitted. An Arbitrator shall have no authority to hear claims of or award damages to any person or entity who has not initiated arbitration and selected an arbitrator in accordance with these Rules and Procedures. Also, an arbitrator shall not have authority to consolidate claims or consider individual claims collectively on the ground that such actions promote efficiency or that the individual damages may be too small to proceed economically, except when there is an express agreement between the Company and the employees in writing, or on the stenographic record of the particular arbitration proceeding for which the agreement to proceed collectively is made.

2. **Representation**

If either party chooses to be represented by an attorney at any point after the initiation of the arbitration procedure, that party must give the other party and the arbitrator written notice. However, if the written notice is received within thirty (30) calendar days of the arbitration hearing or the employee's deposition, then the hearing or deposition shall be continued to a date not less than thirty (30) calendar days after the date of the receipt of the written notice.

Under normal circumstances, the Company will not be represented by an attorney unless the employee chooses to be represented by an attorney. However, in some cases, including those in which the Company has initiated arbitration proceedings, the Company may choose to be represented by an attorney even if the employee indicates that he/she will not be represented by an attorney.

If the employee chooses to be represented by an attorney at any point in the arbitration process, the

2

Company will have the right to be represented by an attorney from that point until the conclusion of the process.

3.   **Appointment of a Mediator**

Unless an employee or the Company has refused mediation, immediately after the demand is filed with the AAA, a mediator will be appointed as follows:

(a)   The AAA will send to the employee and the Company identical lists of at least three proposed mediators. The individuals on the lists will be knowledgeable about employment laws and in most cases will be lawyers.

(b)   Both the employee and the Company will have ten (10) calendar days from the date the AAA mails them the list, unless a reasonable extension has been obtained, to cross off any name(s) to which the party objects; number the remaining names in order of preference; and return the list to the AAA. If a party does not return the list within the applicable timeframes, that party will be treated as having found all persons on the list to be equally acceptable.

(c)   The AAA shall appoint one mediator from the names remaining on the lists. If possible, the AAA will try to honor the preferences of both the employee and the Company. If the employee and the Company do not agree on any of the listed names, or if an acceptable mediator is unable to act, the AAA will send to each party an additional list and the above procedure will be followed one more time. If the employee and the Company do not agree on a mediator from the second list, or if the mediator agreed upon cannot serve, the AAA will appoint a mediator from among other members of its panel of employment dispute mediators. The AAA will notify the employee and the Company in writing of the appointment of the mediator.

The parties and the mediator will confer and agree on a mutually agreeable date to hold the mediation. The AAA will notify the parties in writing at least fourteen (14) calendar days in advance of the mediation session of the date, time and place of the session. The mediation session should take place as soon as possible after the mediator is appointed.

4.   **Qualifications of the Mediator**

The mediator must be a neutral person. That is, no one may be a mediator in any matter in which that person has any financial or personal interest in the result. Before agreeing to mediate a dispute, the prospective mediator shall disclose to the AAA any circumstance likely to prevent a prompt mediation or to create a presumption of bias. Upon receipt of such information, the AAA

3.

will communicate the information to the employee and the Company for comment. Following comments, the AAA may disqualify the prospective mediator and follow the above process to appoint a new mediator.

5.    **The Mediation Session**

At a scheduled mediation session, the mediator talks to each party, then works to help them reach an agreeable resolution. The mediator's goal is to give both parties reasons to move their views closer together. Through a process of give and take the mediator tries to bring the parties to a common ground. The mediator cannot issue a settlement. Both parties must agree. If either party is unwilling to compromise, there is no reason to attempt mediation. If the dispute is not resolved in mediation, or either party chooses to skip that stage, arbitration is the mandatory and the final step.

6.    **Closure of Mediation**

Mediation will end as soon as: (a) the parties reach a mutually satisfactory resolution of the dispute, or (b) one of the parties refuses to continue mediation, or (c) the mediator decides that further mediation would not be productive,

7.    **Appointment of an Arbitrator**

If either party refuses to attempt mediation or if mediation does not resolve the dispute and a party desires to proceed with arbitration, the party should within thirty (30) calendar days of either the refusal to mediate or closure of mediation, submit a written demand in accordance with paragraph 1, if he/she/it has not already done so. An arbitrator will be appointed as follows:

(a)    Immediately after the Company files the employee's or its demand for arbitration (when the parties do not agree to mediate) or, in the case of a failed mediation, immediately after the mediator notifies the AAA that the mediation has failed, and the initiating party's written demand has been submitted, the AAA will send to the employee and the Company an identical list of all arbitrators who are members of the regional Employment Dispute Resolution Roster of the AAA. The individuals on the lists will be knowledgeable about employment laws and have significant experience in the resolution of employment disputes. In order to be qualified to serve as an arbitrator under these Rules and Procedures, the arbitrator must be an attorney licensed to practice in the state in which the employee works or if the employee works in a remote location, in the state in which the Company's office to which the employee reports is located. No one on the lists will have served as mediator in

4

the same dispute, unless both the employee and the Company send a written request to the AAA that the mediator's name be included in the lists.

(b) Both the employee and the Company will have no more than ten (10) calendar days from the date the AAA mails them the list, unless a reasonable extension has been obtained, to cross off any name(s) to which the party objects; number the remaining names in order of preference; and return the list to the AAA.

(c) If a party does not return the list within the applicable timeframes, that party will be treated as having found all persons on the list to be equally acceptable.

(d) The AAA shall appoint one arbitrator from the names remaining on the lists. If possible, the AAA will try to honor the preferences of both the employee and the Company.

(e) If the employee and the Company do not agree on any of the listed names, or if an acceptable arbitrator is unable to act, the AAA will send to each party an additional list and the above procedures will be repeated. If the employee and the Company do not agree on an arbitrator who is otherwise qualified under these Rules and Procedures from the second list, or if the arbitrator agreed upon is unable to serve, the AAA will appoint an arbitrator who is qualified under these Rules and Procedures from among other members of its Employment Dispute Resolution Roster. The AAA will notify the employee and the Company in writing of the appointment of the arbitrator.

8. **Qualifications of the Arbitrator**

The arbitrator must be a neutral person. That is, no one may be an arbitrator in any matter in which that person has any financial or personal interest in the result. An arbitrator under these Rules and Procedures must be an attorney licensed to practice in the state in which the employee works or if the employee works in a remote location, in the state in which the Companies' office to which the employee reports is located. An arbitrator under these Rules and Procedures must be knowledgeable about employment laws and have significant experience in the resolution of employment disputes. Before agreeing to arbitrate a dispute, the prospective arbitrator shall disclose to the AAA any circumstance likely to prevent a prompt arbitration or to create a presumption of bias. Upon receipt of such information, the AAA will communicate the information to the employee and the Company for comment. Following comments, the AAA may disqualify the prospective arbitrator. If an arbitrator is disqualified or unable to serve for any reason, the procedure in paragraph 7 above shall be used to appoint a new arbitrator.

5

9.    **Power of the Arbitrator**

Arbitration under these Rules and Procedures will be governed by the Federal Arbitration Act (Title 9 U.S.C. Secs. 1 et seq.). The arbitrator will have discretion to resolve any question or dispute that may arise before, during and after the arbitration hearing. The arbitrator's power is limited only as follows: The arbitrator must apply statutory and case law to the facts of the dispute and follow conflict of laws principles. The arbitrator will apply the burden of proof required by applicable federal, state or local law. However federal, state or local rules governing court or judicial procedure are not applicable to arbitrations under these rules unless specifically agreed to by both parties. The arbitrator will have the power to award all equitable and legal remedies that would be available in a court of law under applicable law. The arbitrator will have no power to change the Companies' policies and procedures (including this one), to change the law applicable to the facts of the dispute, or to substitute his/her business judgment for that of the Company. The Arbitrator shall apply these Rules and Procedures strictly. The American Arbitration's National Rules for the Resolution of Employment Disputes will apply only where these Rules and Procedures are silent, and in no case shall any AAA rule or arbitrator's decision be applied that is in conflict with or contrary to the substance or intent of these Rules and Procedures. In no case shall the arbitrator apply the Federal Rules of Civil Procedure or any other Local, State or Federal rules of court procedures. No class-wide arbitrations are allowed under the CIGNA Companies' Arbitration Policy or these Rules and Procedures. The arbitrator has no jurisdiction to certify any group of current or former employee's, or applicants for employment as a class in any arbitration proceeding. An arbitrator who is appointed but does not meet the qualifications listed in paragraph 8 above the arbitrator shall disqualify him/herself unless all parties to the dispute to be arbitrated agree specifically and on the record to waive their objection to continued appointment of the arbitrator. Any disputes regarding application of these rules and procedures will be resolved solely by the arbitrator.

10.    **Date, Time and Place of Hearing**

The AAA, in cooperation with the arbitrator and the parties, will set the date, time and place of a hearing (which normally will take place within ninety (90) calendar days of the appointment of the arbitrator). At least sixty (60) calendar days before the date set for the hearing, the AAA will notify the parties in writing of the date, time and place of the hearing.

11.    **Discovery (Fact Gathering)**

(a)    Not less than forty-five (45) calendar days before the date set for the hearing, each party will submit to the other: (1) the names, work or home addresses and job titles of all witnesses the party expects to have testify at the hearing, and if a

6

witness is not an employee of a CIGNA Company, sufficient identifying information must be supplied as well, and (2) a copy of all exhibits and/or documents that the party expects to produce at the hearing.

(b)     A party will be entitled to take no more than two days of depositions - that is, asking questions of and getting sworn answers from the parties, other employees and any other witnesses, who have direct knowledge of the facts surrounding the dispute. A party may not depose any employee of any CIGNA company who certifies in writing to the arbitrator that he/she has no direct knowledge of the facts surrounding the dispute.

Whoever asks for a deposition must: (1) give the other party and the witness at least ten (10) calendar days advance notice so that they both may be present and arrange for process to compel attendance, if necessary; and (2) arrange for a court reporter to attend and record the deposition; and (3) pay for the costs associated with the hiring of a court reporter, producing a deposition transcript for their own use and securing office space.

(c)     A party who is properly notified of the schedule for his/her deposition and who fails to appear will be liable to the other party for the reasonable costs incurred by the other party in setting up the deposition.

(d)     All discovery is to be completed at least twenty (20) calendar days before the date set for the hearing. In addition, at the completion of discovery, each party must then, within ten (10) days, supplement its list of witnesses and exhibits, if necessary. If any exhibit or document was not previously produced to the other party, a copy of it also must be produced at this time.

(e)     The scope and timing of discovery may be expanded, altered, amended or otherwise changed to accommodate the circumstances of a particular arbitration at the discretion of the arbitrator. However the arbitrator will limit exercise of that discretion by keeping in mind any agreement of the parties and that the purpose of arbitration is speedy and cost-effective resolution of individual disputes.

All discovery disputes will be resolved by the arbitrator in accordance with these rules and procedures.

7

12.  **Summary Disposition**

The Arbitrator shall consider and timely rule on any motion for summary disposition, keeping in mind the purpose of arbitration is a speedy and cost effective resolution of disputes.

In determining whether to grant summary disposition, the arbitrator will apply the law in the same manner as a Federal court would in the same jurisdiction.

13.  **Attendance at Hearing**

The employee and the Company are entitled to call witnesses to testify at the hearing and to cross-examine witnesses called by the other party. If a party attempts to call as a witness any employee of any CIGNA company who (1) is not listed as a witness by a party, and (2) certifies in writing to the arbitrator that he/she has no direct knowledge of the facts surrounding the dispute, the arbitrator may disallow the testimony.

Witnesses at depositions and hearings who are employees of a CIGNA company will be permitted to testify without loss of compensation or benefits for time away from work. The Company, however, retains the right to limit the number of employees who may be absent from work at one time. However, an employee who is a party must use vacation and/or personal time off to attend depositions and the hearing. If the employee has no vacation or personal time off available, the employee will be permitted to take unpaid time off for the hearing. The employee is not permitted to use work time to prepare for any aspect of the arbitration process.

The arbitrator will have the power to exclude from the hearing any witness other than a party or other essential person during the testimony of any other witness. The arbitrator will determine whether any other person(s) may attend the hearing. The arbitrator will not have the power to exclude a representative of a government agency from attending the hearing provided one of the parties has given at least five (5) days advance written notice to the arbitrator and the other party of their desire and intention to have the representative present. The arbitrator will maintain the privacy of the hearings and any decision unless he/she decides that it would be appropriate in the circumstances to make the decision public or is required by law to do so.

14.  **Postponement**

The arbitrator, for good cause shown, may postpone any hearing or deadline upon the request of a party or upon the arbitrator's own initiative, and will also grant a postponement if both the employee and the Company agree. However, at all times the arbitrator must consider that one of the purposes of this process is to resolve disputes quickly.

8

15. **Oaths**

Before starting the hearing, the arbitrator will take an oath of office. The arbitrator will require witnesses to testify under oath.

16. **Stenographic Records**

A court reporter shall keep a stenographic record of the proceedings. A party requesting a transcription or copy of the stenographic record must pay the court reporter's fees for producing the requested record. If the other party wants a copy of the stenographic record, then the total cost shall be shared equally by both parties. If a party wants to record the proceedings by audio tape, that party must notify the other party and ask permission from the arbitrator at least seven (7) calendar days in advance of the hearing. The arbitrator will have the power to grant or deny the request and to tape the proceedings for his/her own use.

17. **Proceedings**

Normally, the hearing will be completed within one day. In unusual circumstances and for good cause shown, the arbitrator may schedule as much additional hearing time as the arbitrator in his/her sole discretion thinks is needed, and this extra time will be scheduled as soon as practicable. When a party asserts in a timely fashion that the matter(s) raised by any other party is (are) not arbitrable, the arbitrator will render a decision on the arbitrability of that issue before scheduling and conducting a hearing on the merits of the claim(s). The hearings will be conducted by the arbitrator in whatever manner will most easily and quickly permit full presentation of the evidence and arguments of both parties, however, the arbitrator must apply these Rules and Procedures throughout the Proceedings.

The arbitrator's decision will be subject to judicial review and confirmation in accordance with the Federal Arbitration Act.

18. **Arbitration in the Absence of a Party**

The arbitration may proceed in the absence of any party or representative who, after receiving proper advance notice of the hearing, does not get a postponement from the arbitrator and does not appear at the hearing. The arbitrator will not make a decision against a party just because the party does not appear at the hearing. The arbitrator will require the party that does appear to submit as much evidence as the arbitrator requires to make a decision, although nothing herein shall be construed to relieve a non-appearing party of any burden of proof or production of evidence that would otherwise apply.

9

19.    **Evidence**

The arbitrator shall be the sole judge of the relevance and materiality of any evidence offered. It is not necessary for the arbitrator to strictly follow legal rules of evidence.

20.    **Evidence by Affidavit and Filing of Documents**

The arbitrator may accept evidence in the form of a notarized affidavit of a witness; will consider any objections to the affidavit by the other party; and will then give the affidavit the weight the arbitrator determines it merits. All documents to be considered by the arbitrator must be presented at the hearing. The arbitrator will not receive or consider an exhibit or document that was not already supplied to the other party under paragraph eleven (11). However, the arbitrator should consider the testimony of a witness who testifies his/her recollection has been refreshed by a document, or rebuttal evidence which could not have been reasonably anticipated by the party offering the rebuttal evidence, even though the document was not produced under paragraph eleven (11). Either party may request that the arbitrator consider post-hearing briefs (a written summary of the issues, evidence and arguments). The arbitrator will decide how much time each party may have to submit briefs, and set limits to the length of the briefs, but the arbitrator should be guided by the desire that the dispute be resolved quickly. Post-hearing briefs will be submitted to the arbitrator through the AAA.

21.    **Closing of Hearing**

When the arbitrator is satisfied that the record is complete, he/she in his/her sole discretion will close the hearing.

22.    **Reopening of Hearing**

At any time before the decision is issued, the arbitrator in his/her sole discretion may reopen the hearing either on the arbitrator's initiative or upon the request of a party.

23.    **Waiver of Procedures**

Any party who knows or suspects that any provision or requirement of these procedures has not been complied with and who does not object in writing, or on the stenographic record of a court reporter present at the proceeding, but instead proceeds with the arbitration shall be treated as

10

having waived the right to object.

24. **Time of Award**

The arbitrator will decide the employment dispute promptly unless otherwise agreed by the parties or specified by law. The arbitrator will issue a decision within thirty (30) calendar days of the close of the hearing, or as soon as possible thereafter if both parties agree.

25. **Decision**

(a)  Form - The arbitrator's decision will be in writing and signed by the arbitrator. The decision will include an opinion giving the reasons for the decision. The decision will be implemented in the manner required by law.

(b)  Scope of Relief - The arbitrator will have full power and authority to award any remedy that either party would have been entitled to had the employee taken the dispute to a government agency or to a court. The arbitrator will apply the law of the United States of America and the state and locality in which the employee worked under applicable conflict of law principles. In any award, the arbitrator must deduct lawful set-offs, including (if the law so provides) but without limitation, unemployment compensation, interim earnings or income, severance payments and the compensation and benefits of any other employment. The arbitrator will deduct for failure of the employee or Company to mitigate his/her/its damages, if applicable.

26. **Delivery of Decision to Parties**

The AAA will notify the employee and the Company of the arbitrator's decision by mailing and/or faxing it to the parties (or their representative) at their last known address.

27. **Enforcement**

The arbitrator's decision may be enforced under the provisions of the Federal Arbitration Act (Title 9 U.S.C. Sec. I et seq.). If, despite the intent of these Rules and Procedures that the arbitrator's decision be final and binding, either party tries to overturn the decision, that party must return everything of value received as a result of the decision, before starting any action to overturn the decision, and if the effort to overturn the arbitrator's decision is unsuccessful, must

11

Case 1:10-cv-00008-HSM-WBC   Document 8-3   Filed 06/24/10   Page 40 of 42   PageID #: 104

pay the other party's attorney's fees.

28. **Judicial Proceedings and Exclusion of Liability**

    (a)    Neither the AAA nor any arbitrator in a proceeding under these Rules and Procedures may be sued or made a party in any judicial proceedings related to the arbitration. Participation in arbitration proceedings under these Rules and Procedures shall be deemed to be consent and agreement not to sue the AAA or the arbitrator.

    (b)    Parties to these Rules and Procedures shall be deemed to have consented to the entry of a judgment upon the arbitration decision in any federal or state court with jurisdiction over the parties and the dispute.

29. **Fees, Expenses and Costs**

Unless the employee chooses in his/her demand for arbitration to share equally in such expenses, The Company will pay 100% of any mediation/arbitration administrative fees required by the AAA in excess of any initial filing fee paid by the employee. Except for the salary of witnesses who are active employees of a CIGNA company (which will be paid by the Company), the party who calls a witness to testify at the hearing will pay reasonable expenses or fees requested by that witness. Unless the arbitrator decides otherwise in accordance with applicable law (for example, the law provides that prevailing parties may be awarded reasonable attorney fees), each party shall pay its own legal fees and expenses. The payment of expenses for discovery and stenographic records is covered by paragraphs 10 and 14. All other fees, expenses and costs of the arbitration, such as the arbitrator's travel and other expenses, costs for any witness produced at the direction of the arbitrator, and the expenses of a representative of AAA, if any, shall be paid completely by the Company (unless the employee chooses in his/her demand for arbitration to share in such expenses). Postponement of hearing fees, if any, will be paid by the party that requested the postponement, subject to applicable law. The arbitrator's fees will be paid through the AAA and the arbitrator should not be told who will pay all or a portion of his/her fees.

30. **Serving of Notice**

Service of any notice, form, process, complaint, award, judgment, subpoena, or any other document required or associated with these procedures may be served on a party by (a) certified mail, return-receipt-requested, and first class mail addressed to the party or its authorized

12

representative at the last known address, or (b) personal service acknowledged in writing by the party or authorized representative served. A reasonable opportunity to be heard shall be granted to a party claiming insufficient notice or service.

31. **Amendment or Termination of Arbitration Process**

The Company's policy regarding arbitration of employment related disputes will not be changed except in writing by the Director, Employee Relations, and all changes will be available on the Your CIGNA Life website and from the Your CIGNA Life Service Center at 1.800.551.339.. The Company will distribute notice of all such changes. After a party has commenced proceedings under these Rules and Procedures, the Rules and Procedures cannot be changed by either you or the Company or the arbitrator except in writing signed by you and the President of the Company. No change in the Arbitration Policy or in the Arbitration Rules and Procedures will affect a party who has already started the arbitration process at the time the change is made, unless both the employee and the Company agree to the change in writing.

32. **Interpretation and Application of Process**

The arbitrator shall interpret and apply these Rules and Procedures in accordance with applicable law of contract interpretation.

Revised 2-1-2007

13