# EXHIBIT A


Analysis
As of: Jun 22, 2010

KAREN E. BYRD, Plaintiff, v. CIGNA HEALTHCARE, TENNESSEE d/b/a CT GENERAL LIFE INSURANCE CO., Defendant.

No. 1:00-CV-337

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE

2002 U.S. Dist. LEXIS 26902

February 8, 2002, Decided

**DISPOSITION:** [*1] CIGNA's motion to compel arbitration and dismiss action granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant employer filed a motion to compel arbitration and to dismiss plaintiff employee's action. The employee had filed an action against the employer pursuant to the Americans With Disabilities Act (ADA), 42 U.S.C.S. §§ 12101-12213, and the Tennessee Human Rights Act (THRA), Tenn. Code Ann. §§ 4-21-101 - 903. The court treated the employer's motion as one for summary judgment.

**OVERVIEW:** The employee brought an action against the employer pursuant to the ADA and the THRA, alleging that she was discriminated against because of her disability and retaliated against for engaging in protected activity. The employee further contended that the employer failed to reasonably accommodate her disability. The employer filed a motion to compel arbitration and to dismiss the action. The court treated the motion as one for summary judgment. In granting the motion, the court found that the employee was bound by the employer's arbitration agreement because she had signed a receipt for an employee handbook, which contained the arbitration policy. The employee's signature indicated that she had reviewed the material in the handbook. Moreover, the employee had previously availed herself of the internal grievance procedures that preceded final and binding arbitration. Her use of those procedures confirmed that she was aware of, understood, and accepted them.

**OUTCOME:** The court granted the employer's motion for summary judgment.

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Motions for Summary Judgment > General Overview*
*Civil Procedure > Summary Judgment > Standards > General Overview*
[HN1]Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, a court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. A court cannot weigh the evidence or determine the truth of any matter in dispute.

Page 1

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > Movants*

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > Nonmovants*

*Civil Procedure > Summary Judgment > Standards > Genuine Disputes*

[HN2]The party moving for summary judgment bears the initial burden of demonstrating that no genuine issue of material fact exists. To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material, factual dispute. A mere scintilla of evidence is not enough. The court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party.

*Admiralty Law > Maritime Contracts > General Overview*

*Civil Procedure > Alternative Dispute Resolution > Arbitrations > General Overview*

*Contracts Law > Contract Conditions & Provisions > Arbitration Clauses*

[HN3]An employer can condition employment on an agreement to submit all employment-related claims, including federal statutory claims, to arbitration.

*Civil Procedure > Alternative Dispute Resolution > Judicial Review*

*Contracts Law > Contract Conditions & Provisions > Arbitration Clauses*

*Labor & Employment Law > Collective Bargaining & Labor Relations > Arbitration > Enforcement*

[HN4]In deciding whether arbitration agreements are enforceable against a claimant, a court must look to state law principles.

*Contracts Law > Contract Interpretation > General Overview*

[HN5]Under Tennessee law, the "cardinal rule" of contract interpretation is to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles. To determine the intention of the parties, a court should evaluate the fair construction of the contract terms and conditions; the circumstances of the particular transaction; and the construction placed on the agreement by the parties in carrying out its terms.

**COUNSEL:** For KAREN E BYRD, plaintiff: Phillip A Noblett, Nelson, McMahan, Parker & Noblett, Chattanooga, TN.

For CIGNA HEALTHCARE, Tennessee dba CT General Life Insurance Company, defendant: Frank P Pinchak, Cynthia D Hall, Shumacker, Witt, Gaither & Whitaker, PC, Chattanooga, TN.

For CIGNA HEALTHCARE dba CT General Life Insurance Company, counter-claimant: Frank P Pinchak, Shumacker, Witt, Gaither & Whitaker, PC, Chattanooga, TN.

For KAREN E BYRD, counter-defendant: Phillip A Noblett, Nelson, McMahan, Parker & Noblett, Chattanooga, TN.

**JUDGES:** R. ALLAN EDGAR, CHIEF UNITED STATES DISTRICT JUDGE.

**OPINION BY:** R. ALLAN EDGAR

**OPINION**

**MEMORANDUM**

Plaintiff Karen E. Byrd brings this action against defendant CIGNA Healthcare, Tennessee d/b/a CT General Life Insurance Company ("CIGNA") pursuant to the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, and the Tennessee Human Rights Act ("THRA"), TENN. CODE ANN. §§ 4-21-101 - 903. Byrd claims that she was discriminated against because of her disability and retaliated against for engaging [*2] in protected activity. She also contends that CIGNA failed to reasonably accommodate her disability.

Presently before the Court is CIGNA's motion to compel arbitration and dismiss this action. (Court File No. 10). Because the parties have submitted and relied upon various materials outside the pleadings, the Court shall treat this as a motion for summary judgment. After careful consideration, the Court has determined that the motion shall be **GRANTED**.

*I. Standard of Review*

[HN1]Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV.

Page 2

P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986); *National Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). [*3]

[HN2]The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material, factual dispute. *Celotex Corp.*, 477 U.S. at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248, 249; *National Satellite Sports*, 253 F.3d at 907.

## II. Facts

The relevant facts in this case are undisputed. Byrd commenced employment in HealthSource Provident's Chattanooga, Tennessee data processing department sometime prior to the events described below. On or about June 26, 1997, defendant CIGNA purchased HealthSource Provident and took over its Chattanooga operations. Plaintiff remained in her [*4] job throughout the transition, and she officially commenced employment with CIGNA on or about October 21, 1996.

CIGNA has maintained an employment dispute arbitration policy for many years. On February 6, 1998, Byrd was given a copy of CIGNA's employment dispute arbitration policy. On that date, she signed a receipt for those documents stating

> "This is to acknowledge that I have received my copies of the CIGNA HealthCare Overtime Policy, CIGNA Employment Dispute Arbitration Policy, and "Doing Things the Right Way" brochure. I will take the time to review the material which I have been told includes information on policies for employees of CIGNA HealthCare."

(Court File No. 15, exhibit 6).

Sometime later in 1998, Byrd was given a copy of CIGNA's employee handbook, entitled "You and CIGNA." The handbook contained the company's dispute resolution policy and arbitration procedures in addition to many other company policies. The inside front cover of the handbook provided the following:

> This handbook applies to all U.S. based regular full-time and regular part-time employees of the CIGNA* companies identified on the last page of this handbook. This handbook contains important [*5] information about your contract of employment as well as policies and programs that relate to you in your work at CIGNA and about benefits for which you may be eligible. ***The terms of your employment mentioned in this Handbook are legally binding, and you may wish to review these terms with your legal counsel.***
>
> * * *
>
> This handbook contains only two terms of your employment. They are very important. The first is that your employment is not for any fixed period of time. Just as you can terminate your employment, at any time for any reason, the Company can terminate your employment at any time for any reason. The second is that by accepting employment and being eligible to receive increases in compensation and benefits, you agree that you will not go to court or a government agency for a hearing to decide an employment-related claim. Instead, you will resolve all employment related legal disputed (except worker's compensation and unemployment compensation) by going to a neutral third party arbitrator. ***Regardless of what anyone may have told***

> you or you may have read before you were hired or after, these two terms of your employment are the full and complete agreement between [*6] *you and the Company concerning these terms and cannot be changed except by written agreement between you and your employer signed by the President of the Company.*

(Emphasis in original).

Pages 28 to 30 of the handbook describe the entire employment dispute resolution policy, including the arbitration process and procedures. CIGNA's employment dispute resolution policy contains several steps. First, the employee must choose between either the Speak Easy Process, which specifies three internal phases involving review by management, or the Peer Review Process, which consists of three internal phases involving both coworkers and management. After completion of the Speak Easy Process or the Peer Review Process, the employee may initiate external arbitration proceedings.

According to the terms of the handbook, the arbitration provision applies to claims under the "Americans With Disabilities Act ... and any other federal, state, or local statute, regulation, or common law doctrine, regarding employment discrimination, conditions of employment, or termination of employment." Additionally, the arbitration provision declares that

> *Mutual promises by both the employee* [*7] *and the employer to arbitrate employment related legal claims is a term and condition of an employee's employment and arbitration must be used rather than going to court to enforce legal rights and claims (or going to a government agency which in some states acts like a court in judging claims).*

(Emphasis and italics in original.) Under the described procedures for arbitration, the claimant pays the filing fee required by the American Arbitration Association. All other costs are paid by CIGNA.

It is undisputed that Byrd signed a receipt for the handbook on September 3, 1998. That receipt states that

"this is to acknowledge that I have received my copy of the July 1998 employee handbook, *You and CIGNA*. I have reviewed the material which includes information on policies, programs and services for employees of the CIGNA companies." (Court File No. 12, exhibit 5). By its terms, that document was created for placement in the signing employee's personnel file.

However, the last page of the employee handbook (page 77) contains another document designated for placement in the employee's personnel file. That document states that

> This is to acknowledge that I have [*8] received my copy of the July 1998 employee handbook, *You and CIGNA*. I understand that by accepting employment and being eligible to receive increases in compensation and benefits, I am agreeing to the following two important terms of employment described in *You and CIGNA*: (1) my employment can be terminated by me or my employer at any time for any reason - therefore, my employment is at the will of either party, and (2) I will use the Company's internal and external employment resolution processed to resolve legal claims against the Company -- therefore rather than go to court or to a government agency for a hearing to decide my legal claim, I will submit my employment related legal claims except workers' compensation and unemployment compensation to final and binding neutral third party arbitration. I understand further that these two terms of my employment replace and supersede any prior agreement concerning these terms and cannot be changed except in writing signed by me and the president of the Company.

The parties agree that Byrd never signed that document.

Sometime during October 1998, plaintiff Byrd received a letter placing her on probation for [*9] failure to meet production goals. She grieved that action through CIGNA's Speak Easy Process, which eventually resulted in the removal of that letter from her personnel file.

In November of 1998, plaintiff was diagnosed with left hand tendinitis, osteoarthritis, and PIP index and ring finger cystic nodules, which were causing left wrist pain. After being referred to a specialist in January 1998, plaintiff's doctor listed her condition as permanent and placed Byrd on typing restrictions of no more than four hours per day. Plaintiff contends that between January and May 1998, CIGNA failed to reasonably accommodate her disability. She also contends that she was denied opportunities for other job positions and that CIGNA management disciplined her in violation of the ADA.

Plaintiff filed a charge of discrimination with the Tennessee Human Rights Commission ("THRC") on May 28, 1999. She was ultimately terminated from employment with CIGNA on November 8, 1999, for allegedly threatening a manager. She then initiated this lawsuit.

### III. Analysis

Defendant seeks to have the Court submit this case to arbitration pursuant to CIGNA's employment dispute resolution policy. CIGNA [*10] argues that the arbitration provision is legally binding on Byrd as a term or condition of her employment. Plaintiff disputes this analysis, contending that plaintiff never agreed to be bound by CIGNA's arbitration policy. To support this argument, plaintiff relies on the fact that she never signed the last page contained in the "You and CIGNA" handbook. Notably, plaintiff does not argue that the language or provisions in defendant's handbook are insufficient to establish a binding arbitration policy. Plaintiff insists only that she did not agree to the arbitration provision and therefore is not bound to it.

The parties do not dispute that Byrd's ADA and THRA claims could be subject to final and binding arbitration. Contracts of employment fall under the Federal Arbitration Act ("FAA") and can be subject to arbitration provisions. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 149 L. Ed. 2d 234, 121 S. Ct. 1302 (2001). [HN3]An employer can condition employment on an agreement to submit all employment-related claims, including federal statutory claims, to arbitration. *Id.* The language contained in the CIGNA arbitration agreement is "explicitly stated." *See Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 80, 142 L. Ed. 2d 361, 119 S. Ct. 391 (1998) [*11] (quoting *Metropolitan Edison Co. v. NLRB*, 460 U.S. 693, 708, 75 L. Ed. 2d 387, 103 S. Ct. 1467 (1983)). However, the parties dispute whether the arbitration provision in this case is binding upon Byrd.

[HN4]In deciding whether arbitration agreements are enforceable against a claimant, the Court must look to state law principles. *Perry v. Thomas*, 482 U.S. 483, 492 n.9, 96 L. Ed. 2d 426, 107 S. Ct. 2520 (1987); *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 314; *see also Frizzell Construction Co. v. Gatlinburg, L.L.C.*, 9 S.W.3d 79, 85 (Tenn. 1999). [HN5]Under Tennessee law, the "cardinal rule" of contract interpretation is "to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles." *Frizzell Construction Co.*, 9 S.W.3d at 85 (quoting *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975)). To determine the intention of the parties, the Court should evaluate the fair construction of the contract terms and conditions; the circumstances of the particular transaction; and the construction placed on the agreement by the parties in carrying out its terms." *Id.* at 85.

In the present case, the Court finds [*12] that Byrd is bound to the CIGNA arbitration agreement. Both the circumstances of the transaction and Byrd's own conduct support this finding. By its terms, "accepting employment and being eligible to receive increases in compensation and benefits" binds a CIGNA employee to arbitrate employment-related claims. This statement is contained in both the general terms of the employee handbook and in the section governing CIGNA's dispute resolution policy. Byrd signed a receipt for the handbook indicating that she had "reviewed the material which includes information on policies, programs and services for employees of the CIGNA companies." The handbook also emphasized that the terms therein constitute the "full and complete agreement" between the employee and CIGNA "regardless of what anyone may have told you or you may have read before you were hired or after." Thus, Byrd's signed statement confirms that she read and accepted the provisions contained in the handbook.

Moreover, Byrd had previously availed herself of the internal grievance procedures that precede final and binding arbitration. Her use of those procedures affirm that she was aware of, understood, and accepted them. In fact, [*13] she benefitted from those procedures. These circumstances suggest that Byrd considered herself bound to comply with the dispute resolution policy contained in CIGNA's handbook. Binding arbitration is the final step

under that policy. Her claim shall be dismissed. Should Byrd seek to pursue those claims, she shall submit them to final and binding arbitration.

An order shall enter.

Date: 2/8/02

R. ALLAN EDGAR

CHIEF UNITED STATES DISTRICT JUDGE