# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MORRIS R. COWAN,

    Plaintiff,

v.

CONNECTICUT GENERAL LIFE
INS. CO.

    Defendant.

CIVIL ACTION FILE
NO. 1:01-CV-1623-BBM

## ORDER

This matter is before the court on the Motion of Defendant Connecticut General Life Insurance Company ("Connecticut General") to Compel Arbitration [Doc. No. 5 - 1] and the Motion of Connecticut General to Stay Judicial Proceedings [Doc. No. 5 - 2].

## BACKGROUND

Plaintiff Morris R. Cowan ("Mr. Cowan") brought this action pursuant to the Age Discrimination in Employment Act ("ADEA") against his former employer, Connecticut General. Mr. Cowan alleges age discrimination, retaliation, and breach of an employment agreement. Connecticut General contends that Mr. Cowan is bound by a "valid and enforceable written agreement" which requires him to arbitrate these disputes arising out of his employment. The written

agreement relied upon by Connecticut General is, in part, an employment application executed by Mr. Cowan on October 11, 1998. The employment application contained the following language "I AGREE THAT IN RETURN FOR AN OFFER OF EMPLOYMENT, I WILL RESOLVE ANY DISPUTE I MAY HAVE ABOUT MY EMPLOYMENT OR THE TERMINATION OF MY EMPLOYMENT <u>EXCLUSIVELY</u> THROUGH THE INTERNAL AND EXTERNAL DISPUTE RESOLUTION PROCESSES OF MY EMPLOYER."

Connecticut General states that the language referring to "internal and external dispute resolution processes," includes a written Employment Dispute Arbitration Policy as well as the written Employment Dispute Arbitration Rules and Procedures which were in existence at the time Mr. Cowan completed his employment application. These arbitration rules and procedures were summarized in the employee handbook titled "You and CIGNA." The CIGNA Healthcare Division Employment Dispute Arbitration Policy contained in the employee handbook has been made a part of the record in this proceeding.

Mr. Cowan responds that Connecticut General has failed to demonstrate that he ever received a copy of any material which set forth his obligation to submit his legal claims to arbitration. He argues that because he never received this material, there is no valid and binding agreement between the parties to arbitrate the claims

2

which are the subject of this action. However, it does not appear to be disputed that on August 18, 2000 (after Mr. Cowan had been notified that his position would be eliminated), Mr. Cowan asked for and received a copy of the employee handbook containing the information regarding arbitration. Thereafter, on June 21, 2001, Mr. Cowan filed this action. The court will now consider the Motion to Compel Arbitration and to Stay this Proceeding.

## DISCUSSION

This court must review this arbitration clause in light of the body of federal law governing arbitration, and the federal policy favoring arbitration. "The issue of arbitrability under the [Federal] Arbitration Act is a matter of federal substantive law." Morewitz v. West of England Ship Owners Mut. Prot. and Indem. Ass'n (Luxembourg), 62 F.3d 1356, 1364 (11th Cir. 1995) (citing Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 402-05 (1967)). "Absent some violation of public policy, a federal court must refer to arbitration any controversies covered by the provisions of an arbitration clause."[1] Telecom Italia, SpA v. Wholesale Telecom

---

[1]

9 U.S.C. § 4 states in part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the

3

Corp., 248 F.3d 1109, 1114 (11th Cir. 2001) (citing Chastain v. Robinson-Humphrey Co., 957 F.2d 851, 854 (11th Cir. 1992)). "Whether a party has agreed to arbitrate an issue is a matter of contract interpretation[.]" Id. A party may not be required to arbitrate a dispute it did not agree to arbitrate. See Seaboard Coast Line R.R. Co. v. Trailer Train Co., 690 F.2d 1343, 1348 (11th Cir. 1982). "'[I]f the contract does not (provide for arbitration), then no Federal law requires arbitration.'" Id. (quoting Commercial Metals Co. v. Balfour, Guthrie, & Co., 577 F.2d 264, 266 (5th Cir. 1978)). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).

### DID THE PARTIES AGREE TO ARBITRATE?

First, the court will address the question of whether an agreement to arbitrate, made as a part of an employment application, can be valid. It appears from a review of precedent, that it can. Recently the United States Supreme Court addressed the issue of the arbitrability of employment contracts in Circuit City

---

> controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . .

4

Stores, Inc. v. Adams, 532 U.S. 105 (2001). Although the question of the viability of an agreement to arbitrate made by way of an employment application was not specifically addressed, the arbitration agreement which was upheld by the Court in Circuit City was made by way of an employment contract. Similarly, in Perez v. Globe Airport Security Services, Inc. 253 F. 3d 1280 (11th Cir. 2001), while the court struck down the arbitration agreement as limiting the employee's statutory rights, there was no shortcoming attributed to the agreement because it was made as a part of an employment application. Id. at 1281.

Having determined that Mr. Cowan's signing of the employment application can legally constitute an agreement to arbitrate, the court must next inquire as to whether the terms of that agreement were sufficiently clear to bind Mr. Cowan to arbitrate the subject of this action. The language in dispute in this proceeding is identical to that construed by this court in Glenn v. Intracorp., Inc., No. 1:00-CV-1863-ODE (N.D. Ga., March 2, 2001). The Glenn case is distinguishable from this matter, however, because in the Glenn case it was undisputed that the employee had signed a statement acknowledging that she received the revised handbook. In the case of Mr. Cowan, the only evidence of his receiving the handbook was after he had been given notice of the elimination of his job, and he had requested it. It does not appear to be disputed, however, that Mr. Cowan could have received a

5

copy of the employee handbook at any time and upon request.

"When deciding whether the parties agreed to arbitrate a certain matter courts generally should apply ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc., v. Kaplan 514 U.S. 938, 944 (1995). Under Georgia law, one must look to whether the language in question, standing alone, "would put the ordinary prudent person on notice that complete details were absent from this presentation, and that at least one other source should be consulted for full details." (internal quotation marks omitted). Adams v. Hercules, Inc. 245 Ga. 464, 465 (1980). In the Adams case, the Georgia Supreme Court found that where an employee handbook presented an account of the employer's benefit plans in "very brief form," this was enough to bind an employee to the grievance procedures for which it provided. Id. at 465. The court finds that the language present in Mr. Cowan's employment application was sufficient to put Mr. Cowan on notice that another source should be consulted for details regarding resolution of employment disputes.

Mr. Cowan's arguments are similar to those discussed by the Third Circuit where an employee argued that she had "remained generally ignorant of the details of the Arbitration Agreement." Great Western Mortgage Corp. v. Peacock, 110 F.3d 222, 229 (3rd Cir. 1997). In considering this argument, the Third Circuit stated

6

that "[the employee] misunderstands the narrow scope of the inquiry involved in the arbitration process." Id. at 228. The limited scope of the inquiry, according to the court, was whether an agreement to arbitrate existed, and if so, whether that agreement was valid. The court observed that the employee had made "no effort to find out the terms of the Arbitration Agreement to which she had agreed as a condition of her employment." Id. at 229.

The courts of this Circuit have also acknowledged the federal policy in favor of arbitration. See, e.g., MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999); Paladino v. Avnet Computer Tech., Inc. 134 F. 3d 1054, 1057 (11th Cir. 1998). Based upon its review of the specific facts of this case, as well as the controlling legal precedent, this court finds that Mr. Cowan and Connecticut General entered into a valid contract to arbitrate the dispute which is the subject of this proceeding.

## IS THE AGREEMENT TO ARBITRATE ENFORCEABLE?

Mr. Cowan further asserts that even if his signature on the employment application constituted a contract between the parties, the terms of the contract were such that it should not be enforced because they are unconscionable. Mr. Cowan argues that the agreement is unconscionable for the following reasons: (1) because it restricts discovery; (2) because evidence may be submitted to the

7

arbitrators in the form of affidavits; (3) because, in making an award, the arbitrator is required to deduct lawful set-offs, including "unemployment compensation" and "severance payments"; (4) because the Connecticut General arbitration provisions require that if an employee attempts to appeal the arbitrator's decision and is unsuccessful, the employee must pay the employer's attorneys fees.

This court has recently been given guidance in evaluating arbitration agreements in the <u>Perez</u> case, where the Court declined to enforce an arbitration agreement because it found that the agreement limited remedies that "Congress had determined were appropriate[.]" <u>Perez</u>, 253 F. 3d 1286. In evaluating the arbitration agreement which is the subject of this proceeding, this court will look to the language of the agreement at the time Mr. Cowan left the employment of Connecticut General.[2]

Upon review of the procedures set forth in the arbitration agreement, this court finds that the discovery provisions and the provisions regarding the use of affidavits are merely procedures which apply equally to each of the entities who are participating in the arbitration. These procedures do not appear to this court to

---

[2] During Mr. Cowan's employment with Connecticut General, CIGNA Healthcare Division made "minor revisions" to both the Arbitration Policy and the Rules and Procedures. Mr. Cowan's arguments regarding the enforceability of those provisions appear to apply equally to both of the versions of the Policy and the Rules and Procedures.

8

restrict any legal rights of the parties. Indeed, the Statement of Policy includes the following language:

> This policy is intended to prevent an employee from going to court over employment related disputes; it is not intended to take away any other rights. This policy does not prevent, prohibit or discourage an employee from filing a charge with, participating in an investigation of, or otherwise seeking redress from, the National Labor Relations Board (NLRB) Regional Office; the Equal Employment Opportunity Commission ("EEOC"), or any other state or federal agency.

As noted above, Mr. Cowan also objects to the language set forth in the arbitration policy which requires the arbitrator to "deduct lawful set offs, including, but without limitation, unemployment compensation, interim earnings, and severance payments." Mr. Cowan argues that this language renders the arbitration agreement unenforceable because unemployment compensation cannot legally be deducted from an amount recovered by the employee. This court agrees with Connecticut General, however, that under the terms of the arbitration agreement, the arbitrator may not offset amounts which could not otherwise be "lawfully" offset. Indeed, the policy recites in the provisions governing the power of the arbitrator that "the arbitrator must apply statutory and case law to the facts of the dispute." The court finds, therefore, that the policy statement, on its face, would prohibit any offsets which are not otherwise permitted by law. Accordingly, this provision cannot be said to render the arbitration agreement unenforceable.

9

Finally, the court must address what is perhaps the closest question regarding the viability of arbitration agreement. The arbitration policy statement calls for either party to the arbitration to (1) "return everything" if they seek to overturn the decision of the arbitrator, and (2) pay the other party's attorney's fees if the attempt to overturn the arbitrator's decision is unsuccessful. In <u>Perez</u> the Eleventh Circuit considered a provision stating that "all fees imposed by any arbitrator hearing the dispute, will be shared equally between you and the Company." <u>Perez</u>, 253 F. 3d at 1285. The Court found that this provision circumscribed the arbitrator's authority to award fees permitted a prevailing party under Title VII, therefore rendering the arbitration agreement unenforceable.

However, the agreement reviewed by the court in <u>Perez</u> is distinguishable from that in the current case. Contrary to the objectionable provision in <u>Perez</u>, the provision in the instant case limits the employee's liability for costs of the arbitration to one hundred dollars (unless the employee elects otherwise). It is only upon the loss of an appeal of the arbitration award that a party (either party) is required to pay the attorneys' fees associated with the appeal of the arbitration award. Although the court has found no precedent dealing with precisely this type of provision, it is persuaded that the provision regarding attorney's fees upon the loss of an appeal passes muster. The Federal Arbitration Act provides, in part, that

10

written provisions to arbitration a controversy shall be "valid, irrevocable, and enforceable." See 9 U.S.C. § 2. The court is satisfied that this provision, seeking to enforce the finding of the arbitrator, furthers this provision of the Federal Arbitration Act without circumscribing any statutory rights of employees. Accordingly, the court finds that the provisions of the Arbitration Agreement do not render it unenforceable, and the Motion to Compel Arbitration filed by Connecticut General in this proceeding is hereby GRANTED.

## SUMMARY

Defendant's Motion to Compel Arbitration as to the claims of Mr. Cowan [Doc. No. 5 - 1] is hereby GRANTED. Pursuant to 9 U.S.C. § 3, Defendant's Motion to Stay this Matter Pending Arbitration [Doc. No. 5 - 2] is also GRANTED. The parties are directed to file a report regarding the status of the arbitration within sixty (60) days of the entry of this Order, and each sixty (60) days thereafter until the arbitration has been concluded. The clerk is directed to administratively terminate this file.

IT IS SO ORDERED, this 28th day of December, 2001.

BEVERLY B. MARTIN
United States District Judge

11

ENTERED ON DOCKET

JAN 0 2 2002

BY               LDT CLERK
         DEPUTY CLERK