# EXHIBIT D



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION
FILED IN CLERK'S OFFICE
U.S.D.C.-Atlanta

MAR 2 2001

LUTHER D. THOMAS, CLERK
By: Deputy Clerk

CAROLYN GLENN

    Plaintiff,

v.

    CIVIL ACTION NO.
    1:00-CV-1863-ODE

INTRACORP, INC.

    Defendant.

## ORDER

This civil action, alleging employment discrimination based on sex, race, and pregnancy, in violation of Title VII of the Civil Rights Acts of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, et seq., and 42 U.S.C. § 1981a, is currently before the court on the December 12, 2000 Report and Recommendation ("R&R") of Magistrate Judge Gerrilyn G. Brill. In the report, Judge Brill recommends granting the motion to compel arbitration and stay judicial proceedings of Defendant Intracorp, Inc. ("Defendant"). Plaintiff filed timely objections to the report. For the reasons set forth below, Defendant's motion to compel arbitration and stay judicial proceedings is granted.

When a party files timely objections to a Magistrate Judge's recommended disposition of a dispositive matter, a district court must make a de novo determination as to any portion of the disposition to which the party objects. Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(B). As Defendant's motion to compel arbitration and stay judicial proceedings is dispositive, see 28
AO 72A
(Rev.8/82)

U.S.C. § 636(b)(1)(B), this court must review the objected-to portions of the December 12, 2000 report on a _de novo_ basis.

The court will adopt the facts as outlined in Judge Brill's R&R to which neither party objects and omit those facts that are irrelevant to the issues before the court. The court also adopts herein all undisputed statements of law contained in the R&R.

Plaintiff Carolyn Glenn ("Plaintiff") was employed by Defendant from approximately July, 1996 through June, 1999. [R&R at 1]. The employment application signed by Plaintiff contained the following provision:

> I AGREE THAT IN RETURN FOR AN OFFER OF EMPLOYMENT, I WILL RESOLVE ANY DISPUTE I MAY HAVE ABOUT MY EMPLOYMENT OR THE TERMINATION OF MY EMPLOYMENT EXCLUSIVELY THROUGH THE INTERNAL AND EXTERNAL EMPLOYMENT DISPUTE RESOLUTION PROCESSES OF MY EMPLOYER.

[_Id._ at 2]. Following the commencement of her employment, on July 15, 1996, Plaintiff signed a receipt indicating that she received the employee handbook. Despite evidence presented by Defendant that "it was normal business practice to provide a copy of the INTRACORP Arbitration Policy and the INTRACORP Rules and Procedure[s] to all new employees along with the employee handbook," Plaintiff denies receiving any information regarding the arbitration policy as originally enacted in December, 1995. [_Id._].

Defendant subsequently revised its employee handbook to include a modified version of the December, 1995 arbitration policy. The modifications are not relevant for purposes of the instant motion. This arbitration policy provides:

2

> Intracorp believes it is in the best interests of employees and the company to resolve employment-related disagreements and problems as fairly and quickly as possible. Applying the public policies expressed in the Federal Arbitration Act, Intracorp's policy is that arbitration by a neutral third-party is the required and final means for the resolution of any serious disagreements and problems not resolved by Speak Easy or Peer Review, Intracorp's internal dispute resolution processes.... Both Intracorp and the employee will be bound by any decision made by an arbitrator. If the employee or Intracorp do not abide by the arbitrator's decision, either party may go to court to enforce the arbitrator's decision, but arbitration must be used before going to court. This policy is intended to substitute final and binding arbitration, which is fair, quick and inexpensive, for going to court, which is slow and expensive.

[Id. at 3-4]. As for the types of covered disputes, the arbitration policy further provides:

> This policy covers only serious employment-related disagreements and problems, which are those that concern a right, privilege or interest recognized by applicable law. Such serious disputes include claims, demands or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Civil Rights Act of 1991....

[Def.'s Rsp. to Pl.'s Obj. to R&R, Exh. F]. On November 14, 1996, Plaintiff acknowledged receipt of the revised handbook by signing the following statement:

> This is to acknowledge that I have received my copy of the Intracorp employee handbook. I will take the time to review the material contained in it which includes information on policies, programs and services of Intracorp.

[R&R at 4]. Plaintiff maintains that she only received updates to the handbook regarding two unrelated policies, and that she "never received any information concerning mediation and/or arbitration programs at Intracorp...." [Id. at 5].

Following her termination, Plaintiff filed the instant action

3

on July 24, 2000. In her complaint, Plaintiff contends that Defendant discriminated against her on the basis of race, sex, and pregnancy, and retaliated against her following her complaints about the same. Plaintiff argues that such actions violate Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") and 42 U.S.C. § 1981. Defendant filed the instant motion to compel arbitration and stay judicial proceeding on August 16, 2000.

In the R&R, Judge Brill recommends granting Defendant's motion to compel arbitration and stay judicial proceedings. Judge Brill concluded that Plaintiff "entered into a binding arbitration agreement under state law," and that "no 'legal constraints external to the parties' agreement foreclose[] the arbitration of [plaintiff's] claims.'" [R&R at 16 (quoting Mitsubishi Motors Corp. v. Soler Chrisler-Plymouth, Inc., 473 U.S. 614, 628 (1985))]. Plaintiff objects to the R&R for two reasons.

First, Plaintiff denies that a valid contract to arbitrate was created either by the initial employment application or the revised handbook. Plaintiff submits that the arbitration clause contained in the initial employment application "is too vague to constitute a valid contract under Georgia law." [Pl.'s Obj. to R&R at 2]. Furthermore, Plaintiff contends that "[s]imply signing an acknowledgment that she received a handbook does not indicate that she received the handbook that defendant alleged to have given to her as a matter of law." [Pl.'s Obj. to R&R at 4]. Essentially, Plaintiff appears to argue that because she disputes

4

having received the revised handbook, the provision regarding arbitration in her employment application constitutes the sole arbitration agreement for purposes of the instant motion.

At the outset, it is undisputed that Plaintiff signed a statement acknowledging that she received the revised handbook. [See R&R at 4]. Plaintiff fails to offer any evidence to reconcile this acknowledgment with her contention that she did not receive the handbook, either in her initial opposition to Defendant's motion to compel arbitration or in her objections to the R&R. Absent some credible explanation for this discrepancy, the court concludes that Judge Brill properly determined that the contents of the revised handbook may be considered in analyzing whether Plaintiff entered into a valid arbitration agreement. [See R&R at 12].

Judge Brill considered both Plaintiff's employment application and Defendant's Mediation/Arbitration policy as set forth in the revised handbook and concluded that these documents together form the basis for a valid contract to arbitrate. Under the Georgia Supreme Court's holding in Adams v. Hercules, Inc., 265 S.E.2d 781 (Ga. 1980), Judge Brill correctly noted that "the contents of an employee handbook can form the substance of a binding contract impliedly accepted by the employee by remaining in employment." [R&R at 10]. Furthermore, because the presence of a signature on a contract evinces the signer's assent to its terms, any attempt to avoid contractual obligations based on a failure to read the provisions of the contract must be rejected.

5

[Id. at 11 (citing Coleman v. Prudential Bache Securities, Inc., 802 F.2d 1350 (11th Cir. 1986))].

Therefore, as Judge Brill concluded, Plaintiff's signature on her employment application manifested her assent to its terms. Although the arbitration agreement was set forth in general terms in the employment application, the specific details of the arbitration policy were provided in the handbook. A general reference to a particular policy is sufficient to put the employee on notice of the existence of that policy and to bind the employee to the terms thereunder. See Adams, 265 S.E.2d at 782-783. As such, Judge Brill correctly determined that Plaintiff entered into a valid arbitration agreement.

Second, Plaintiff disputes Judge Brill's conclusion that Plaintiff knowingly agreed to arbitrate her Title VII claims. Plaintiff maintains that "the [arbitration] agreement must plainly demonstrate that plaintiff knew she was waving [sic] the right to have her Title VII claims adjudicated in a judicial forum." [Pl.'s Obj. to R&R at 4]. Contrary to general contract principles, Plaintiff appears to advocate that employees be permitted to avoid their contractual obligation to arbitrate where they can show that they were not fully aware of all of the terms of the agreement. [See R&R at 13]. Although Plaintiff cites the case of Brisentine v. Stone Webster Engineering Corp., 117 F.3d 519 (11th Cir. 1997), as support for this proposition, the United States Court of Appeals for the Eleventh Circuit has clarified that "Brisentine does not stand for the proposition that an

6

arbitration agreement must specifically list every federal or state statute it purports to cover." Paladino v. Avnet Computer Techs., Inc., 134 F.3d 1054, 1059 (11th Cir. 1998). Instead, to compel arbitration of statutory claims, an arbitration agreement must "contain terms that generally and fairly inform the signatories that it covers statutory claims." Id. See e.g., Brown v. ITT Consumer Financial Corp., 211 F.3d 1217, 1221-22 (11th Cir. 2000) (finding Title VII claims were covered by agreement to arbitrate "any dispute between them or claim by either against the other"); Bender v. A.G. Edwards & Sons, Inc., 971 F.2d 698, 700, n. 1 (11th Cir.1992) (finding Title VII claims were contemplated by agreement to arbitrate "any dispute, claim or controversy that may arise between me and my firm....").

The Eleventh Circuit has not yet passed on the issue of whether arbitration agreements regarding Title VII claims require a knowing and voluntary waiver of an employee's right to a judicial forum. Nonetheless, Judge Brill properly analyzed relevant Eleventh Circuit cases, as well as persuasive authority from other circuits, to reject Plaintiff's argument. The First Circuit and the Ninth Circuit are the only circuit courts to have adopted a heightened standard for analyzing the validity of arbitration agreements regarding statutory claims such as Title VII. See Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 170 F.3d 1 (1st Cir. 1999) (employee would not be required to arbitrate where he had not entered into a "knowing and voluntary" agreement); Nelson v. Cypus Bagdad Copper Corp., 119

7

F.3d 756, 760-62 (9th Cir. 1997) (arbitration was not "appropriate" as required by Civil Rights Act of 1991 where employer failed to provide employee with a document describing the claims covered by the arbitration agreement as promised), cert. denied, 523 U.S. 1072 (1998). However, as Judge Brill noted, these approaches have been criticized by other courts, including the Sixth Circuit. See Haskins v. Prudential Ins. Co. of America, 230 F.3d 231, 235-41 (6th Cir. 2000). Central to this criticism is the concern that adopting a higher standard for arbitration agreements "would in effect hold that a party to a contract is not chargeable with the knowledge of the terms contained in the contract," thus releasing the party "from his obligations under a contract with absolutely no basis in contract law." [R&R at 15 (quoting Haskins, 230 F.3d at 239)].

In light of the Eleventh Circuit's application of "basic principles of contract interpretation in harmony with a general federal policy in favor of arbitration," Judge Brill adopted the reasoning set forth in Haskins and declined to scrutinize Plaintiff's arbitration agreement under a more exacting standard than that required by basic contract law. [R&R at 15-16 (quoting Paladino, 134 F.3d at 1057)]. Because the terms of the arbitration agreement, as set forth in Plaintiff's employment application and expanded upon by the employee handbook, sufficiently advised Plaintiff that Title VII claims would be covered, Judge Brill properly concluded that the arbitration agreement should be upheld. As such, this court will adopt Judge

8

Brill's recommendation and grant Defendant's motion to compel arbitration and stay judicial proceedings.

Accordingly, the Report and Recommendation of Magistrate Judge Gerrilyn G. Brill [#6] is hereby ADOPTED IN ITS ENTIRETY. Defendant's motion to compel arbitration and stay judicial proceedings [#3] is hereby GRANTED. The Clerk is directed to administratively close the file.

SO ORDERED, this 2 day of March, 2001.

ORINDA D. EVANS
UNITED STATES DISTRICT JUDGE